**BANNER ADVERTISING, INC., Petitioner,**

**v.**

**The PEOPLE OF the CITY OF BOULDER, By and on Behalf of The People of the State of Colorado, Respondent.**

**A AERIAL ADVERTISING BANNERS, INC., d/b/a Banner Advertising, Inc., and Donald R. Mathews, Petitioners,**

**v.**

**The PEOPLE OF the CITY OF BOULDER, By and on Behalf of The People of the State of Colorado, Respondent.**

Nos. 92SC796, 93SC70.

Supreme Court of Colorado,
En Banc.

Feb. 14, 1994.

J. Scott Hamilton, P.C., J. Scott Hamilton, Louisville, for petitioner.

Office of the City Atty., Joseph N. de Raismes, III, Claire M. Largesse, Boulder, for respondent.

Yodice Associates, John S. Yodice, Richard K. Ketler, Washington, DC, Treece, Alfrey & Musat, P.C., L. Richard Musat, Denver, for amicus curiae Aircraft Owners and Pilots Ass'n.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to decide whether section 10–11–3 of the Boulder City Code prohibiting commercial signs towed by aircraft is preempted by federal law, by operation of the Supremacy Clause of the United States Constitution. A Aerial Advertising Banners, Inc., doing business as Banner Advertising, Inc., Banner Advertising, Inc.,[1] and the corporations' president, Donald Mathews, petitioned this court to review two decisions of the Boulder District Court upholding the Boulder ordinance.

Banner was charged with violating the ordinance on two separate occasions. Both times the Boulder Municipal Court found Banner guilty of violating the ordinance and ordered Banner to pay a fine. Banner appealed each time to the Boulder District Court, which affirmed the lower court, ruling that federal law does not preempt the Boulder city ordinance. We disagree and reverse

---

1. The corporate entities will be referred to jointly as "Banner Advertising" or "Banner."

the ruling of the Boulder District Court. We hold that the Boulder city ordinance prohibiting commercial signs towed by aircraft is preempted by federal law and therefore the ordinance is not enforceable.

## I.

The relevant part of the preamble to the Boulder ordinance states:

> Council finds that commercial signs towed over the City by aircraft are a distraction to motorists and other users of the public streets and ways, impairing traffic safety, and a source of noise created by multiple passes over the city and therefore should be prohibited for the health, safety, and welfare of the people of the city.

Boulder Revised Code (B.R.C.) § 10–11–1(e). The code further states:

> (c) *Specific Signs Prohibited.* No person shall erect, install, post, display, or maintain any of the following signs:
>
> (1) *Airborne Advertising:* A commercial sign towed aloft by aircraft.

B.R.C. § 10–11–3(c)(1) (footnote omitted). "Commercial sign" is defined in the code as

> a sign which identifies, advertises, or directs attention to a business or is intended to induce a purchase of a good, property, or service, including without limitation, any sign naming a brand of good or service and any sign which is not a noncommercial sign.

B.R.C. § 10–11–2(a)(10).

Two separate violations of the ordinance by Banner underlie this action.[2] On September 4, 1991, a Banner pilot flew above the University of Colorado football stadium in Boulder towing a sign reading "WINSTON'S—BOULDER'S BEST FISH STORY," referring to a restaurant in downtown Boulder. Banner was charged with violating the ordinance and fined $500 on February 5, 1992. Banner appealed to the Boulder District Court, claiming that the Boulder ordinance was preempted by federal law. On November 4, 1992, the district court affirmed the judgment.

On May 2 and 3, 1992, Banner flew over Boulder with a sign advertising a sale at McGuckin Hardware. On August 26, 1992, the municipal court levied a $2,000 fine against Banner and issued a cease and desist order. Banner appealed the judgment, again claiming federal preemption. The same district court judge who had heard the appeal from the first case affirmed on December 30, 1992.

When these two violations took place, Banner was operating under a "Certificate of Waiver or Authorization" it had received from the Federal Aviation Administration (FAA), which authorized Banner to conduct "[b]anner [t]owing for the purpose of advertising." The certificate outlined sixteen provisions with which Banner was required to comply, including restrictions on the hours a banner could be towed and safety standards for the plane, towing mechanism, and pilot. The certificate also contained a paragraph stating:

> This Certificate constitutes a waiver of those Federal Rules or Regulations specifically referred to above. It does not constitute a waiver of any state law or local ordinance not otherwise preempted by the United States Constitution or Federal Statute or Regulation.

Attached to its motion to dismiss, Banner submitted a copy of an opinion letter written by the chief counsel of the Federal Aviation Administration in Washington, D.C., specifically stating that, in the opinion of the agency, the Boulder city ordinance "represents an impermissible attempt to regulate in an area preempted by the Federal Government." The detailed, four-page letter explains that, by issuing the Certificate of Waiver or Authorization, the federal government, through the FAA, exclusively regulates banner-towing operations in navigable airspace.

On appeal, the Boulder District Court rejected Banner's preemption arguments. According to the court, the language of the certificate stating that it does not constitute a waiver of any state law or local ordinance

---

**2.** The two cases reached us separately, as *Banner Advertising, Inc. v. People,* No. 92SC796, and *A Aerial Advertising Banners, Inc., d/b/a Banner Ad-* *vertising, Inc., and Donald R. Mathews v. People,* 93SC70, but they were not consolidated into one appeal.

"manifests a clear intent by the FAA *not* to preempt state and local regulation of towing objects by aircraft." Further, the court held: "[T]he FAA, by the wording of its certificate of waiver, has left the door wide open for local regulation of this area.... The federal agency defers to state and local regulations according to the language of the certificate of waiver." The opinion letter from the FAA chief counsel, the court found, was "wholly without merit." The court concluded that the regulation of signs towed by aircraft was not preempted by the federal government.

## II.

Banner claims that the federal government has preempted the area of regulation of signs towed by aircraft pursuant to the Supremacy Clause of the United States Constitution, and that the Boulder ordinance prohibiting aircraft from towing commercial signs is an impermissible attempt to regulate in this area. The City of Boulder contends that there is no basis for federal preemption.

■ The doctrine of preemption originates in the Supremacy Clause of the United States Constitution:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ..., shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., art. VI, cl. 2. *See also Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824) ("[I]n every case, the act of Congress, or the treaty, is supreme; and the law of the state, though enacted in the exercise of powers not controverted, must yield to it."). State law that conflicts with federal law is without effect. *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

■ Preemption is fundamentally a question of congressional intent. Congress' intent to monopolize an area is expressed in the authorizing statute and in the regulations enacted pursuant to that statute. *Hillsborough County v. Automated Medical Labs.,*

*Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). The preemptive effect of a federal regulation is equal to that of a federal statute. *Fidelity Fed. Savs. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

■ A statute or regulation may be construed as being preemptive under three circumstances. *See Cipollone v. Liggett Group, Inc.,* — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). First, Congress' intent to preempt state law may be explicitly stated in the statute. *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Second, in the absence of express statutory language, preemption may be inferred from a "scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *see also Hillsborough County,* 471 U.S. at 713, 105 S.Ct. at 2075. Implied preemption also occurs when "'the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *De La Cuesta,* 458 U.S. at 153, 102 S.Ct. at 3022 (quoting *Santa Fe Elevator Corp.,* 331 U.S. at 230, 67 S.Ct. at 1152). Third, preemption exists when state law conflicts with federal law. This last form of preemption is implicated when it is impossible for a private party to simultaneously comply with both state and federal laws,[3] or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

■ A court must presume that "the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone,* — U.S. at —, 112

---

**3.** *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Florida*

*Lime and Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

S.Ct. at 2617 (quoting *Santa Fe Elevator Corp.*, 331 U.S. at 230, 67 S.Ct. at 1152). This presumption is especially strong in matters related to health and safety, traditionally within the province of state and local governments. *California v. ARC America Corp.*, 490 U.S. 93, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989).

### III.

We consider the three types of federal preemption individually and apply their tests to the Boulder ordinance.

### A.

■ The Federal Aviation Act contains no explicit provision by Congress that manifests an intent to preempt local regulation in the area of air traffic and airspace management, nor, specifically, banner towing by an aircraft. The only reference to federal preemption in the Federal Aviation Act states:

> Except as provided in paragraph (2) of this subsection [which exempts Alaska], no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C.A.App. § 1305(a)(1) (Supp.1993). "Air carrier" is defined by the statute as "any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation." 49 U.S.C.A. § 1301(3) (1976). " 'Air transportation' means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft." 49 U.S.C.A. § 1301(10) (1976). Banner is not an "air carrier" providing "services" under § 1305 because it is not involved in "air transportation" under the statute. Moreover, "banner towing ... [is] not considered to be the carriage of persons or property for compensation or hire." Special Flight Operations Rule, 14 C.F.R. § 91.313(c) (1993).

Thus, the Boulder ordinance is not explicitly preempted by the Federal Aviation Act.

### B.

■ We next turn to the second preemption test, and analyze whether the federal interest in the field of airspace regulation, and, specifically, in the area of banner towing, is dominant and pervasive.

The pervasive role of the federal government in air traffic and airspace management was described by the United States Supreme Court in *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944): "Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." *Id.* at 303, 64 S.Ct. at 956; *see also City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973) (holding that the "pervasive nature of the scheme of federal regulation" preempted city's ordinance regulating noise of aircraft flying overhead); *Country Aviation, Inc. v. Tinicum Township*, 1992 WL 396782 (E.D.Pa.1992) (same); *Blue Sky Entertainment, Inc. v. Town of Gardiner*, 711 F.Supp. 678 (N.D.N.Y.1989) (ruling that local ordinance regulating parachute jumping and attendant aircraft noise was preempted).

Among the enumerated powers and duties of the Secretary of Transportation under the Federal Aviation Act is "[t]he control of the use of the navigable airspace of the United States and the regulation of both civil and military operations in such airspace in the interest of the safety and efficiency of both." 49 U.S.C.A.App. § 1303(3) (Supp.1993). The Secretary is also directed by the Act to

> develop plans for and formulate policy with respect to the use of the navigable airspace; and assign by rule, regulation, or order the use of the navigable airspace under such terms, conditions, and limitations as he may deem necessary in order to insure the safety of aircraft and the efficient utilization of such airspace....
>
> . . . .

... The Secretary of Transportation is further authorized and directed to prescribe air traffic rules and regulations governing the flight of aircraft, for the navigation, protection, and identification of aircraft, for the protection of persons and property on the ground, and for the efficient utilization of the navigable airspace.....

49 U.S.C.A.App. § 1348(a), (c) (Supp.1993).

In addition to its control over the general activities of aircraft in flight, the federal government also exercises pervasive control over the specific act of banner towing by an airplane. Regulations promulgated by the FAA restrict the towing of objects by civil aircraft, including banners. Section 91.311, 14 C.F.R. states: "No pilot of a civil aircraft may tow anything with that aircraft ... except in accordance with the terms of a certificate of waiver issued by the Administrator." The certificate waives the requirement to comply with Regulation 91.311, that is, to refrain from towing anything with a civil aircraft. The certificate imposes additional restrictions on pilots and aircraft that regulate safety and the hours during which towing operations may occur.

Banner Advertising received such a certificate of waiver from the FAA, and was conducting its operations in navigable airspace under specific authority from the FAA at the time of its two violations of the Boulder ordinance. The certificate it held authorized "[b]anner [t]owing for the purpose of advertising." The certificate outlined safety procedures regarding the use of tow ropes, tow hitches and other mechanisms, training and activities of pilots, and in-flight operations. According to the record on appeal, the holder of a waiver certificate also receives additional documents from the FAA District Office, which set forth more specific FAA standards for banner towing, including minimum flight altitudes and geographic boundaries for towing operations.

The City of Boulder argues that, because the Federal Aviation Act and accompanying regulations do not specifically address the display of an *advertising message* towed by an aircraft, they do not preempt the Boulder ordinance. It is not the banner that is prohibited by the ordinance, the City asserts, but rather the advertising message.[4] The City's argument to uphold the ordinance would be plausible if we were addressing a First Amendment challenge to commercial speech,[5] but in the context of a federal preemption argument, it is not persuasive. Differentiating between the types of speech allowed on a banner is immaterial to the question of whether the federal government has occupied the field of regulation of banner towing. The City's argument is further weakened by the manner in which it has chosen to enforce the ordinance. The City has not enforced the ordinance against advertisers, only against airplane operators. Thus, it appears that it is not the advertising message that the City is regulating, but rather the conduct of the aircraft operators.

■ The City further argues that the FAA waiver certificate explicitly excludes the possibility of its preempting state or local laws. Under "Standard Provisions," the certificate contains the following statement:

Note—This certificate constitutes a waiver of those Federal rules or regulations specifically referred to above. It does not constitute a waiver of any State law or local ordinance.

The City claims that the FAA only granted Banner an exemption from the FAA regulation prohibiting towing and that the certificate states on its face that it does not preempt state or local law. The FAA, the City asserts, echoing the decision of the district court, "has left the door wide open for local regulation." We disagree. First, the federal government in this situation has no power to exempt an individual from a proper state or local law. By restricting its direct effect to federal laws, the certificate only states a fundamental principle of the doctrine of federalism. *See, e.g,* Alexander Hamilton, *The Federalist,* Nos. 17, 31. Second, preemption is paramount. Once preempted by

---

4. The ordinance prohibits only commercial messages—not, for example, political ones.

5. A First Amendment challenge to the ordinance was not raised in the trial court, and we do not address it here.

federal law, a local ordinance does not regain its force in spite of the overriding effect of a federal law or regulation. The statement in the certificate does not and cannot provide the City with additional powers that it did not already possess prior to the issuance of the waiver.

Attached to one of Banner's motions in the trial court was a letter from the chief counsel of the Federal Aviation Administration to the Boulder City Attorney. The letter concludes, after a lengthy analysis, that the Boulder ordinance is an impermissible attempt to regulate banner towing, because the area is preempted by the federal government's occupation of the field. Citing federal case law, the letter notes that state or local governments may not regulate aircraft operations through their police powers nor regulate navigable airspace. Through the certificate of waiver issued by the FAA to Banner, Banner is authorized to conduct banner-towing operations in the navigable airspace, a federal procedure which, the letter claims, preempts the Boulder regulation.

■■■■■ Interpretations of statutes by administrative agencies are customarily given respect and accorded deference by courts. *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Most case law addresses situations in which an administrative agency makes a decision after a formal proceeding. The opinion of the FAA's chief counsel, however, was not reached as a result of hearing adversary proceedings in which he found facts and reached conclusions of law. It is in no way binding on a court. Nevertheless, the letter was written as part of the official duties of the chief counsel, and is based on a level of more specialized expertise than most judges possess, so we may properly look to it for guidance. While opinion letters from administrative agencies are not binding authority, they can be used as persuasive authority. *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124

(1944). We find the letter from the FAA's chief counsel to be instructive in its interpretation of the FAA regulation and the effect of the certificate of waiver. The letter concludes that the FAA is the sole regulator of banner-towing operations in navigable airspace, and that the certificate's language stating that it does not waive state or local law refers only to those activities that a state or local government could ordinarily regulate, such as license fees or taxes.

The purposes behind the Boulder ordinance add further support to the conclusion that the ordinance is preempted by federal law. The stated purpose for the Boulder ordinance is that the overflights of aircraft towing banners impair traffic safety and are a source of noise. The United States Supreme Court has ruled that a local government may not enact legislation that attempts to restrict airplane noise because that field is in the exclusive domain of the federal government.[6] *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854. The Boulder ordinance's prohibition on banner advertising by aircraft in order to improve traffic safety also overlaps with federal authority. The Federal Aviation Act directs the Secretary of Transportation to prescribe rules and regulations "for the protection of persons and property on the ground." 49 U.S.C.A.App. § 1348(c) (Supp.1993). Boulder's attempt to regulate aircraft for the purpose of safety of persons on the ground impermissibly enters an arena reserved for the federal government and is thus preempted by the federal statute.

We conclude that the Boulder ordinance impermissibly intrudes into the exclusive domain of the federal government to regulate the towing of banners by aircraft.

### C.

■■■■ Although we hold that the Boulder ordinance is preempted because the federal government has occupied the field, we also

---

6. A limited exception to this overall federal preemption has been carved out for state or local governments who own airports. *See City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 635–36 n. 14, 93 S.Ct. 1854, 1861 n. 14, 36 L.Ed.2d 547 (1973); *Aircraft Owners and Pilots*

*Ass'n v. Port Authority of New York,* 305 F.Supp. 93 (E.D.N.Y.1969); *Midway Airlines v. County of Westchester,* 584 F.Supp. 436 (S.D.N.Y.1984). Banner did not use the Boulder airport on the days it violated the ordinance.

address the third preemption test, whether the Boulder ordinance is preempted because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67–68, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).[7]

The federal government's authority to regulate air safety is not an equal and concurrent power shared with the states or with local governments. *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944). Any state or local authority to regulate in this area is subordinate to federal law. *See Hines,* 312 U.S. at 68, 61 S.Ct. at 404–405.

In *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), the United States Supreme Court ruled that Pennsylvania regulations imposing additional requirements on registered aliens were preempted by federal law in the same area. After finding that the purpose of both the state and federal laws was identical—the registration of aliens as a distinct group[8]—and that the power to regulate immigration was not equally and concurrently shared by the federal government and the states,[9] the Court held that the more stringent Pennsylvania law was preempted and could not be enforced.[10]

Similarly, in *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978), the Supreme Court ruled that the State of Washington's safety standards for sea tanker vessels that were more stringent than federal standards were preempted by the federal regulations in that area. The state regulations were "at odds with 'the object sought to be obtained by the [federal Ports and Waterways Safety Act of 1972] and the character of the obligations imposed by it.' " *Id.* at 168, 98 S.Ct. at 999–1000 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The *Ray* court noted, however, that states were not prohibited from enacting and enforcing local laws *that had other purposes* and did not overlap with the purpose underlying the federal law or regulation. *Id.* 435 U.S. at 164, 98 S.Ct. at 997–998.

In the present case, the Boulder ordinance regulates aircraft in flight and prohibits commercial banner towing by an aircraft. The FAA regulation allows banner towing if the pilot first obtains an FAA certificate of waiver. The Boulder ordinance is more stringent than the FAA regulation. Moreover, as in *Hines* and *Ray,* the stated purpose of the Boulder ordinance is the same as one of the purposes of the federal regulation: the protection of the safety of persons and property on the ground. *See also Starr v. United States,* 393 F.Supp. 1359 (N.D.Tex.1975) (stating that the purpose of the FAA regulations is to promote safety in the air and on the ground); *Rauch v. United Instruments, Inc.,* 548 F.2d 452, 457 (3d Cir.1976) (citing 104 Cong.Rec. 13657 (1958) (noting that, in enacting the Federal Aviation Act, Congress' greatest concern was safety)); 49 U.S.C.A.App. § 1348(c) (Supp.1993) ("The Secretary of Transportation is . . . authorized and directed to prescribe air traffic rules and regulations . . . for the protection of persons and property on the ground"). The Boulder ordinance is more stringent than the federal regulation and its purpose is identical. It stands as an obstacle to the accomplishment and execution of the federal regulation and is therefore preempted.

## IV.

We hold that the Boulder ordinance prohibiting an aircraft's towing of a banner in navigable airspace is preempted by the Federal Aviation Act and its accompanying regulations. Although the federal statute does not explicitly preempt the local ordinance, it is clear that Congress impliedly intended to monopolize the field of regulating banner towing by aircraft. In addition, the Boulder

---

7. The Boulder ordinance does not directly conflict with federal law. It is possible for Banner to comply simultaneously with both laws by not towing banners over the city of Boulder.

8. *Hines v. Davidowitz,* 312 U.S. 52, 61, 61 S.Ct. 399, 401, 85 L.Ed. 581 (1941).

9. *Id.* at 68, 61 S.Ct. at 404–405.

10. *Id.* at 74, 61 S.Ct. at 408.

ordinance conflicts with the purposes and objectives of the federal legislation and regulations.

The judgment of the district court is reversed, and we hold that the Boulder city ordinance is not enforceable.