**Leonard Louis MEIER, Plaintiff–Appellant,**

v.

**Robert McCOY and Mike Gabel, Defendants–Appellees.**

No. 02CA1348.

Colorado Court of Appeals, Div. II.

Dec. 30, 2004.

Rehearing Denied March 3, 2005.

Certiorari Denied Sept. 6, 2005.

Donald Chad Goldy, Denver, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Eric M. Ziporin, Denver, Colorado, for Defendants–Appellees.

CARPARELLI, J.

In this personal injury action, plaintiff, Leonard Louis Meier, appeals the judgment in favor of defendants, Robert McCoy and Mike Gabel, officers of the Commerce City Police Department. He also appeals the award of attorney fees and costs. We affirm.

Plaintiff was injured while being arrested by defendants. He sued defendants for negligence, assault, and battery, and prayed for punitive damages based on willful and wanton conduct. Plaintiff also alleged defendants used excessive force in violation of his civil rights under 42 U.S.C. § 1983. The jury returned verdicts for defendants on all claims. Thereafter, defendants asked for attorney fees, and the court awarded fees against plaintiff and his attorney, jointly and severally.

I.

Plaintiff contends that the trial court erred when it disqualified his expert witness and denied his motion to strike defendants' expert. We disagree.

■ CRE 702 governs a trial court's determination regarding the admissibility of expert testimony. When proposed expert testimony involves experience-based specialized knowledge, the court must consider whether the testimony will be helpful to the jury and whether the witness is qualified to render an expert opinion on the subject in question. *People v. Shreck,* 22 P.3d 68 (Colo.2001); *Brooks v. People,* 975 P.2d 1105 (Colo.1999). If the testimony is admissible under CRE 702, the court must then determine whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. CRE 403; *Brooks v. People, supra.*

■ The qualification of an expert witness to testify is within the trial court's discretion and will not be disturbed absent an abuse of that discretion. *Southerland v. Argonaut Ins. Co.,* 794 P.2d 1102 (Colo.App.1990). An abuse of discretion occurs only when the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Keybank v. Mascarenas,* 17 P.3d 209 (Colo.App.2000).

A.

■ We first reject plaintiff's argument that the trial court improperly excluded the testimony of his expert witness.

1.

Plaintiff argues that the witness was qualified to render the opinion that defendants used excessive and unreasonable force because (1) he is a certified emergency techni-

522

cian; (2) he is a founder and owner of a company that performs executive protection and forensic investigations; and (3) he has "extensive" experience in law enforcement as a firearms instructor and bloodhound expert. We are not persuaded.

The trial court concluded that plaintiff's witness was not qualified to testify as an expert on the use of force by law enforcement officers effecting an arrest. The court reasoned that the witness had never (1) been employed in a law enforcement field, (2) participated professionally in a determination of what force a police officer may use in making an arrest, (3) arrested anyone, (4) completed a police officer training course, or (5) been retained by a police department to teach use of force. The court found that although the witness is a certified federal firearms instructor, he considers himself an expert in the use of firearms but not in other aspects of the use of force. The court also found that the only training in emergency medicine the witness had was the EMT basic course.

Claims of excessive use of force are analyzed under a Fourth Amendment objective reasonableness standard. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Because the record shows that the witness had not been trained or employed as a police officer and did not have any other experience that would have qualified him to assess the reasonableness of the use of force from the perspective of a police officer, he was not qualified to testify regarding the conduct of a reasonable police officer. Thus, we conclude that the trial court's ruling disqualifying plaintiff's witness was not arbitrary, unreasonable, or unfair.

## 2.

We reject plaintiff's contention that the trial court has a duty to voir dire an expert witness sufficiently to apprise itself of the nature and substance of the proposed expert testimony.

The cases plaintiff relies on in support of his proposition are inapposite. It was plaintiff's burden to demonstrate the qualifications of the witness and the relevance of his testimony, not the court's duty to ferret out that information.

## 3.

To the extent plaintiff argues that the court's bases for disqualifying his witness are contrary to the decision in *People v. Bornman*, 953 P.2d 952 (Colo.App.1997), we disagree. Contrary to plaintiff's assertion, the *Bornman* witness was not disqualified because he had never been previously qualified as an expert or because he did not belong to any particular organization, but because he was not qualified by experience.

## 4.

We also disagree with plaintiff's contention that an expert witness's lack of qualification goes to the weight of the witness's testimony rather than to its admissibility. *See People v. Shreck, supra; Brooks v. People, supra* (expert testimony is inadmissible if the witness is not qualified to render an expert opinion on the subject in question). We also reject plaintiff's contention that the court employed "flawed" reasoning in disqualifying the witness.

## B.

Plaintiff next contends that the trial court erred when it denied his motion to strike defendants' expert witness. Plaintiff argues that he reasonably believed that defendants' witness would not testify because that witness was endorsed as a rebuttal witness and, after the court disqualified plaintiff's expert witness, there was no expert testimony to rebut. We are not persuaded.

Defendants' C.R.C.P. 26(a)(2) disclosure stated that the witness would testify in the fields of law enforcement policy and procedure and, specifically, regarding the appropriate use of force by defendants. Defendants produced the witness's narrative report summarizing the proposed testimony. It also stated that "[i]n addition, [the witness] may be called to rebut the opinions of Plain-

tiff's expert ... once those opinions become fully disclosed through deposition."

Defendants later filed an amended designation of witnesses stating that the witness "will be called as an expert in law enforcement policy and procedure." The amended designation did not state that the witness would be called only in rebuttal.

On the day the court excluded plaintiff's expert witness, the parties filed a proposed trial management order in which defendants again stated that they "will call" the expert witness.

We conclude that defendants' disclosures clearly state defendants' intention to call the witness and do not imply that they would only call him if plaintiff's expert testified. Therefore, we reject plaintiff's contention.

■ Because plaintiff did not raise the issues at trial, we decline to address his argument that defendants' witness was not qualified to testify as an expert because (1) his testimony was not based on any methodology or independent investigation, and (2) he did not have sufficient education. *See Denver Urban Renewal Auth. v. Berglund–Cherne Co.*, 37 Colo.App. 360, 553 P.2d 99 (1976), *aff'd*, 193 Colo. 562, 568 P.2d 478 (1977).

To the extent plaintiff contends that by allowing defendants' expert witness to testify, the court violated plaintiff's right to a fair trial, plaintiff provides no basis in law to support this contention.

## II.

■ We also reject plaintiff's contention that the trial court committed reversible error by assuming the role of advocate.

During cross-examination of defendants' expert on plaintiff's damages, plaintiff's counsel probed the expert's opinion that plaintiff had suffered no damages and asked the witness to consider that plaintiff had been out of work for six months. The expert opined that plaintiff had suffered no economic damage over his remaining work life because plaintiff's remaining work life "is no different than what had already been demonstrated in prior history." He explained that it was appropri-

ate to look at plaintiff's work pattern from age twenty to the present, his "rate of incarceration," and "the amount of time he has to take off because of alcoholism" because, "[a]ll of that impacts his earning capacity. He's had 22 DUIs."

The court granted plaintiff's motion to strike and instructed the jury to disregard the "comment about a number of DUIs." After the jury was excused, plaintiff's counsel asked for a mistrial on the ground that it was improper to accuse plaintiff of driving while he had been drinking.

Before ruling on the motion, the court asked plaintiff's counsel whether he had discussed the ramifications of the motion with his client and whether he had told him "that [a mistrial] would likely result in another two-year delay and probably cost him thousands upon thousands of dollars to get back to the position he's in today." The court further commented that counsel should tell his client that he had already unequivocally admitted that he should not have been driving because he was under revocation, the evidence was overwhelming that he was intoxicated, and the expert's comment had been struck. The court also stated that the implication that plaintiff should not have been driving and was driving while intoxicated was "smeared all over the record." The court again told plaintiff's counsel to determine whether his client wanted "to take another couple years and spend all this money again to get right back to where he is right now." After talking with plaintiff, plaintiff's counsel reported that plaintiff wanted to continue with the trial and withdrew his motion.

Plaintiff does not contend that the court's comments were erroneous. Instead, he contends that the court's statements were directed at plaintiff rather than his counsel and that the court placed plaintiff's counsel in the impossible position of advising his client to pursue a course contrary to the one implied in the court's comments.

In support of his argument, plaintiff cites *Hansen v. State Farm Mutual Automobile Insurance Co.*, 957 P.2d 1380 (Colo.1998), and *Polster v. Griff's, Inc.*, 184 Colo. 418, 520 P.2d 745 (1974).

In *Hansen,* the supreme court concluded that the trial court is not required to craft an appropriate instruction regarding a party's theory of the case when the party's own counsel declines to do so. The court stated that "the trial judge is not an advocate and need not serve as counsel for either party." *Hansen v. State Farm Mut. Auto. Ins. Co., supra,* 957 P.2d at 1384.

In *Polster,* the supreme court concluded that a trial court is not required, sua sponte, to give a limiting instruction regarding testimony to which no party has objected.

Here, we conclude that the trial court remained impartial and did not assume the role of advocate when it acted to ensure that plaintiff's counsel informed plaintiff of the consequences of a mistrial and ascertained plaintiff's preferred course. Moreover, there is no basis to conclude that plaintiff's decision to withdraw the motion was coerced.

We, therefore, perceive no reversible error.

### III.

Plaintiff next contends that certain instructions submitted to the jury were erroneous and require reversal. We disagree.

■ The purpose of jury instructions is to provide the jury with the applicable law and direct its attention to the specific issues to be determined. Instructions should include only correct statements of law by which the evidence is to be examined and applied. *Yampa Valley Elec. Ass'n v. Telecky,* 862 P.2d 252 (Colo.1993). When reviewing the propriety of an instruction, we must consider the instructions as a whole and determine whether they properly instructed the jury. *People v. Lewis,* 710 P.2d 1110 (Colo.App. 1985).

### A.

■ Plaintiff argues that Instruction No. 34 is erroneous because it states that "officers' evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force." Plaintiff contends that there was no evidence that defendants had evil intentions and that this instruction improperly suggested that defendants' evil intent was relevant to the jury's decision. We are not persuaded.

■ An instruction that misleads or confuses the jury constitutes error. *States v. R.D. Werner Co.,* 799 P.2d 427 (Colo.App. 1990). However, language in a jury instruction is not a basis for reversal unless it prejudices a party's substantial rights. *Phillips v. Monarch Recreation Corp.,* 668 P.2d 982 (Colo.App.1983). Prejudicial error exists when the record shows that a jury might have answered differently if a proper instruction had been given. *Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986).

Here, the instruction is a correct statement of law. *See Graham v. Connor, supra.* Although the disputed language may not have been necessary absent explicit allegations or evidence that defendants acted with evil intentions, the instruction did not add an element to plaintiff's burden of proof. Moreover, the instructions as a whole properly instructed the jury, and therefore, we perceive no error.

We also reject plaintiff's contentions that the instruction was improper because (1) some of its language came from dicta in *Graham;* (2) subjective concepts such as "twenty-twenty hindsight" and "evil intentions" confused the jury; (3) there was no evidence that defendants were acting under a "mistaken belief" or had to make split-second judgments; (4) it embodied defendants' theory of the case and was argumentative; (5) it did not ask the jury to find the existence or nonexistence of a fact and thus, violated the holding in *Richardson v. People,* 25 P.3d 54 (Colo.2001); and (6) it contained several quotations from *Graham,* and the practice of including a portion of an opinion as a jury instruction usually results in reversible error.

Plaintiff did not raise these objections at trial and, thus, waived them. *See Ross v. Colo. Nat'l Bank,* 170 Colo. 436, 463 P.2d 882 (1969)(failure to object to the trial court's instructions operates as a waiver).

### B.

Plaintiff next argues that the phrase "deliberate indifference" in Instruction No. 32

served no legitimate purpose and confused the jury. At trial, plaintiff objected only to the phrase "probable cause" and, thus, failed to preserve this issue. *See Ross v. Colo. Nat'l Bank, supra.*

## C.

Plaintiff further argues that the trial court committed reversible error when it included the term "evil motive or intent" in Instruction No. 44. Plaintiff argues that he was not required to prove evil motive or intent to prevail on his claim for punitive damages under § 1983.

Plaintiff did not prevail on his § 1983 claim, and we have found no error related to that verdict. Therefore, this contention is moot, and we need not consider it. *See Bd. of County Comm'rs v. Denver Bd. of Water Comm'rs,* 718 P.2d 235 (Colo.1986).

## IV.

■ Plaintiff next contends that the trial court improperly awarded attorney fees to defendants pursuant to § 24–10–110(5)(c), C.R.S.2004. Plaintiff alleges that his only claim was under 42 U.S.C. § 1983 and that, as a result, the standard contained in 42 U.S.C. § 1988 applies and preempts the standard under § 24–10–110(5)(c). We disagree.

We review interpretations of statutes de novo. *Pueblo Bancorporation v. Lindoe, Inc.,* 63 P.3d 353, 361 (Colo.2003).

## A.

■ Federal preemption is grounded in the Supremacy Clause and renders inapplicable a state statute to the extent that it conflicts with federal law. *Brubaker v. Bd. of County Comm'rs,* 652 P.2d 1050 (Colo.1982).

■ "An analysis of federal preemption issues begins with 'the basic assumption that Congress did not intend to displace state law.'" *Middleton v. Hartman,* 45 P.3d 721, 731 (Colo.2002) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981)).

■ Federal preemption of state law is "fundamentally a question of congressional intent." *Banner Adver., Inc. v. City of Boulder,* 868 P.2d 1077, 1080 (Colo.1994).

■ Preemption occurs when federal law explicitly preempts state law. Federal law may also implicitly preempt state law when the federal interest in the field touched by the statute is so dominant that courts will assume that the federal system precludes enforcement of state laws on the same subject. *Banner Adver., Inc. v. City of Boulder, supra* (citing *Fid. Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982); *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

■ In addition, federal law preempts state law when the two conflict, that is, when it is impossible simultaneously to apply both laws. *See Banner Adver., Inc. v. City of Boulder, supra,* 868 P.2d at 1080.

## 1.

■ To state a claim for violation of § 1983, a plaintiff must allege (1) the defendant was acting under color of state law, and (2) the defendant deprived the plaintiff of a right secured by the federal constitution or federal law. *Quezada v. County of Bernalillo,* 944 F.2d 710 (10th Cir.1991).

If a plaintiff is unsuccessful in proving such a claim, he or she may be liable for the defendant's attorney fees only upon a finding that the claim was frivolous, unreasonable, or without foundation. 42 U.S.C. § 1988; *State v. Golden's Concrete Co.,* 962 P.2d 919 (Colo. 1998).

In *State v. Golden's Concrete Co., supra,* the supreme court held that § 13–17–201, C.R.S.2004, which provides for the mandatory award of attorney fees, conflicted with 42 U.S.C. § 1988 as to a § 1983 claim and, therefore, was preempted by the federal statute. Section 13–17–201 mandates an award of fees to prevailing defendants in all actions brought as a result of a death or an injury to person or property occasioned by tort, when the court dismisses the action under C.R.C.P. 12(b).

## 2.

However, public employees are protected against tort claims under the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2004. To overcome a public employee's immunity against a tort claim for injury that arises from an act occurring during the employee's performance of duties and within the scope of employment, a plaintiff must allege that the act was willful and wanton. Section 24–10–118(2)(a), C.R.S.2004.

In addition, when a plaintiff proves willful and wanton conduct, he or she may be awarded reasonable exemplary damages. Section 13–21–102, C.R.S.2004.

When a plaintiff sues a public employee and asserts but fails to establish that the employee's conduct was willful and wanton, he or she is liable for the defendant's attorney fees. Section 24–10–110(5)(c).

## B.

We reject plaintiff's contention that to state a § 1983 claim, he was required to allege state law claims.

To state a § 1983 claim, a plaintiff must allege that the defendant deprived him of a right secured by the *federal constitution or federal law. Quezada v. County of Bernalillo, supra.* Thus, allegation of state law claims is not only not required, it is not sufficient to state a claim under § 1983.

Here, plaintiff's original complaint did not state a claim under § 1983. Instead, it asserted only state common law claims. To withstand the CGIA, plaintiff had to allege that defendants acted willfully and wantonly. The allegation of willful and wanton conduct also entitled plaintiff to pray for exemplary damages, and he did so.

Plaintiff did not state his § 1983 claim until he amended his complaint about four months later. There, he repeated the same common law claims and added the § 1983 claim, which alleged that defendants used excessive force while acting under color of law and in derogation of his civil rights. Although plaintiff's § 1983 claim references and incorporates the allegations he stated in his common law claims, it does not otherwise allege that defendants acted willfully and wantonly.

Two months before trial, defendants' counsel suggested that plaintiff drop his claims for willful and wanton conduct and exemplary damages in return for compensatory damages from the city. Defendants' counsel reminded plaintiff's counsel that he was exposing himself and his client to a mandatory award of attorney fees in excess of $50,000.

The state law claims and the § 1983 claims were separately tried. The court instructed the jury that for plaintiff to recover from defendants on his claims of negligence, assault, and battery, the jury was required to find that each defendant's actions against plaintiff were willful and wanton. In addition, the court instructed the jury that if it awarded actual damages for plaintiff's common law claims, it could award punitive damages if it found beyond a reasonable doubt that defendants acted in a willful and wanton manner.

The instructions regarding plaintiff's § 1983 claim did not include willful and wanton conduct as an element. Instead, the jury was instructed that for plaintiff to prevail, he was required to prove that the offending conduct was intentional or reckless, or was done under circumstances amounting to deliberate indifference. With regard to punitive damages for the § 1983 claim, the jury was instructed that punitive damages required a finding that defendants were motivated by evil motive or intent or that defendants' actions involved reckless or callous indifference to plaintiff's federal rights.

Because plaintiff's original complaint asserted only state law claims and because the instructions included willful and wanton conduct only with regard to the elements of the state law claims and punitive damages related to those claims, we conclude that the allegations of willful and wanton conduct supported only those claims and that relief. *Cf. Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 969 P.2d 812, 814 (Colo. App.1998)(award of attorney fees vacated where assertions of willful and wanton con-

duct were stated in support of §§ 1983 and 1988 claims).

Therefore, we conclude that it was not necessary for plaintiff to allege state claims or willful and wanton conduct to state a cognizable claim under § 1983 and that the allegations of willful and wanton conduct did not support his federal claim.

Still further, we conclude that § 1988 may be applied to plaintiff's § 1983 claim and that § 24–10–110(5)(c) may be simultaneously applied to plaintiff's common law claims without disrupting the federal statute. *See Haynes v. City of Gunnison,* 214 F.Supp.2d 1119 (D.Colo.2002); *Goodwin v. Debekker,* 807 F.Supp. 101 (D.Colo.1992)(§ 24–10–110(5)(c) not applicable to federal claims litigated in federal court).

Neither party asked for a hearing regarding attorney fees, and plaintiff did not object to the reasonableness of the fees, which totaled $140,207.70. In addition, the court carefully allocated the fees and found that "nearly all, if not all, of the witnesses and exhibits presented would have been the same even if the § 1983 claim had not been included."

Thus, we perceive no error in the award of attorney fees.

## V.

Last, plaintiff argues that because the court entered its order on costs outside of the sixty-day requirement of C.R.C.P. 59, the order is void. We disagree.

■ C.R.C.P. 59 provides that the court must determine any post-trial motion within sixty days of the date of filing of the motion, and any post-trial motion that has not been decided within that time shall be deemed denied. However, a motion for costs is not a motion for post-trial relief and, therefore, is not governed by C.R.C.P. 59. *See Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072 (Colo.

1988). Instead, it is governed by C.R.C.P. 54.

The judgment is affirmed.

Judge ROTHENBERG and Judge CASEBOLT concur.