Carol ANTOLOVICH, Richard Antolovich, Carolyn Thompson, John Thompson, Frederick Hall, Susan Jane Lee, and Heidi Groomer, individually and as class representatives, Plaintiffs–Appellants and Cross–Appellees,

v.

BROWN GROUP RETAIL, INC., a Pennsylvania corporation, Defendant–Appellee and Cross–Appellant,

and

Redfield Rifle Scopes, Inc., an Iowa corporation, Defendant–Appellee.

No. 04CA1528.

Colorado Court of Appeals, Div. IV.

Aug. 23, 2007.

Certiorari Denied May 19, 2008.

The Hannon Law Firm, LLC, Kevin S. Hannon, Frederick W. Ganz, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Gail K. Johnson, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Montgomery, Little, Soran & Murray, P.C., Stephen J. Hensen, C. Todd Drake, Greenwood Village, Colorado, for Defendant–Appellee.

Opinion by Judge HAWTHORNE.

In this toxic tort case, plaintiffs, Carol Antolovich, Richard Antolovich, Carolyn Thompson, John Thompson, Fredrick Hall, Susan Jane Lee, and Heidi Groomer, individually and as representatives for a class of homeowners from Denver's Cook Park neighborhood (collectively homeowners), appeal the judgment the trial court entered after denying their motion for a new trial, and its order awarding defendant Brown Group Retail, Inc. (Brown) costs. Brown cross-appeals the trial court's award of prejudgment interest. We affirm the judgment, including prejudgment interest, reverse the award of costs, and remand for further proceedings.

## I. Background

In March 2000, homeowners filed a complaint against Brown and Redfield Rifle Scopes, Inc. (RRSI). Homeowners alleged that Brown and RRSI had released "chlorinated solvents and other toxic chemicals" during their operations at property located at 5800 East Jewell (Redfield site). They alleged that the solvents and chemicals had migrated under the neighborhood in a groundwater plume, contaminated the soil, and gradually converted into a gas which invaded their homes, causing annoyance, discomfort, and loss of use and enjoyment of their properties. They asserted claims for negligence, nuisance, trespass, unjust enrichment, strict liability, respondeat superior, and exemplary damages. After a hearing, the trial court certified a class of homeowners pursuant to C.R.C.P. 23.

During discovery, Brown withheld several memoranda which detailed its investigation of spills and pollution at the Redfield site,

claiming that they were prepared in anticipation of litigation and therefore protected by attorney work product privilege.

Trial was initially set to commence in April 2003. However, a few days before trial, RRSI filed a motion to compel discovery, arguing that Brown had improperly refused to disclose relevant factual information about its interview of a former Brown and RRSI employee (Noland), who recalled dumping "sludge" at the Redfield site in the east field and reporting this activity to Brown. The trial court found that Brown had improperly refused to disclose this information and had provided misleading discovery responses. It continued the trial until September 2003 and reopened discovery on a limited basis, requiring Brown to produce additional documents and allowing additional depositions. The court also conducted sanctions hearings.

Discovery disputes continued throughout the six-month continuance, and the court appointed a discovery master to resolve these disputes.

On September 8, 2003, all parties announced they were ready to proceed to trial. The trial lasted three months. During trial, the jury considered liability of Brown, RRSI, and several designated nonparties. On December 8, 2003, the jury returned its verdict finding Brown liable for negligence, but not for nuisance or trespass, and finding RRSI not liable on any claims. It awarded $2,288,450 in damages: $1,144,225 for homeowners' annoyance and discomfort, and the same amount for the loss of use and enjoyment of their properties. The jury also apportioned fault between Brown and designated nonparties, finding Brown 44% responsible, Colorado Department of Transportation (CDOT) 45%, Polka Dot Cleaners 7%, Farm Crest 3%, and Al Brewer's Auto Service (Brewer) 1%. It did not award punitive damages.

Following the receipt of the verdict, the court continued the sanctions hearing and awarded fees and costs to homeowners and RRSI for their work required during the continuance.

Homeowners then filed a motion for a new trial pursuant to C.R.C.P. 59 and 60, which the trial court denied.

Thereafter, Brown requested an award of costs, which the court granted pursuant to § 13–17–202(1)(a)(II), C.R.S.2006, because Brown had offered to settle for an amount greater than the damages awarded to homeowners. The court entered judgment against Brown in the amount of $2,056,581.53 after accounting for the fault of nonparties, and it awarded homeowners prejudgment interest on their damages at 9% per annum, accruing from November 23, 1994. This appeal and cross-appeal followed.

## II. Nonparty Designations

Homeowners contend that the trial court erred by allowing what they characterize as Brown's and RRSI's untimely and deficient nonparty designations. We disagree.

■ We note at the outset that, as to this and homeowners' other contentions, we will not address arguments made for the first time in their reply brief. *See Colo. Korean Ass'n v. Korean Senior Ass'n*, 151 P.3d 626, 629 (Colo.App.2006).

■ Under § 13–21–111.5(3)(b), C.R.S. 2006, a defendant may designate nonparties at fault, and the jury may consider those nonparties when apportioning liability. *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 535 (Colo.1997). Nonparty designation "ensures that parties found liable will not be responsible for more than their fair share of the damages." *Pedge v. RM Holdings, Inc.*, 75 P.3d 1126, 1128 (Colo.App.2002).

Designations must contain identifying information for the nonparty in addition to "a brief statement of the basis for believing such nonparty to be at fault." Section 13–21–111.5(3)(b). Our supreme court has interpreted this language to require defendants designating nonparties to allege sufficient facts to "satisfy all the elements of a negligence claim." *Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d 75, 81 (Colo.2001); *see also Stone v. Satriana*, 41 P.3d 705, 709 (Colo.2002)(interpreting *Redden* to require that designations "establish a prima facie case" against the nonparty).

[3] Whether nonparty designations comply with § 13–21–111.5, C.R.S.2006, presents a question of law that we review de novo. *Pedge, supra,* 75 P.3d at 1128.

Here, Brown and RRSI filed their first set of designations on November 13, 2000, and March 19, 2001, respectively (initial designations). After these designations were filed, the supreme court announced its decision in *Redden,* and, based on that decision homeowners asked the court to permit Brown and RRSI to file conforming supplemental designations, which they did in April 2002 (supplemental designations).

## A. Timeliness

Homeowners argue that the trial court abused its discretion in accepting the initial designations, which were not timely filed. We disagree.

Under the Colorado statute, the "[n]egligence or fault of a nonparty may be considered ... if the defending party gives notice that a nonparty was wholly or partially at fault within ninety days following commencement of the action unless the court determines that a longer period is necessary." Section 13–21–111.5(3)(b).

■ We review a trial court's decision to extend the ninety-day deadline for filing nonparty designations for abuse of discretion because "[t]rial courts have the responsibility of managing their dockets, moving cases toward completion, and assuring that parties comply with deadlines." *Redden, supra,* 38 P.3d at 84. "A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair." *E–470 Pub. Highway Auth. v. Revenig,* 140 P.3d 227, 230 (Colo. App.2006).

### 1. Application of C.R.C.P. 6(b)

■ We reject homeowners' argument that the trial court erred because it did not require Brown or RRSI to demonstrate "excusable neglect" pursuant to C.R.C.P. 6(b)(2) prior to accepting the initial designations.

By its own terms, C.R.C.P. 6(b) applies only to requests to enlarge deadlines set forth in the rules of civil procedure, a notice under those rules, or a court order. The rule does not apply to statutorily established time periods. *See* C.R.C.P. 6(b).

Section 13–21–111.5(3)(b) expressly permits a court to accept nonparty designations filed outside the ninety-day period when it determines that "a longer period is necessary." It does not require a determination that an untimely filing was also the product of excusable neglect. *See* § 13–21–111.5(3)(b). And when a statute clearly provides an alternative procedure or requirements, the provisions of C.R.C.P. 6 do not apply. *See State Bd. of Registration for Prof'l Eng'rs v. Brinker,* 948 P.2d 96, 99 (Colo.App.1997)(where a statute provides that a filing period ends in a certain number of days after mailing, the three-day "mailing window" provision of C.R.C.P. 6(e) does not apply).

### 2. Late Filing

■ We also reject homeowners' argument that the trial court abused its discretion by allowing Brown and RRSI to file their initial designations outside the statutory period.

Here, after requesting extensions to file their initial designations, Brown and RRSI filed them approximately four and seven months late, respectively. The trial court accepted the untimely filings.

However, while designation of nonparties in this case required complex scientific analysis of potential sources of groundwater contamination, the initial designations were filed more than two years before the original trial date. Also, they were filed shortly after homeowners and Brown filed their initial C.R.C.P. 26 disclosures in October 2000. Brown's initial designations were filed before, and RRSI's shortly after, homeowners filed their third amended complaint. Given these circumstances, we conclude that the trial court did not abuse its discretion in determining that a longer period than ninety days was necessary for Brown and RRSI to file their initial designations. *Cf. Redden, supra,* 38 P.3d at 83–84 (trial court did not abuse its discretion in refusing to accept nonparty designations filed "nearly six months after the statutory deadline, and

twenty-one days after the court-ordered deadline"); *Chavez v. Parkview Episcopal Med. Ctr.*, 32 P.3d 609, 611 (Colo.App.2001)(trial court did not err in refusing to accept nonparty designations filed "seven months after the case was initiated").

## B. Adequacy

Homeowners argue that RRSI's initial designations were inadequate because they did not set forth a prima facie case against the designated nonparties. We conclude that any error was harmless.

■ Although *Redden* was decided after RRSI filed its initial designations, we will assume for the purposes of our review that its prima facie case requirement is applicable.

Here, even if RRSI's initial designations failed to state a prima facie case, and the trial court erred in accepting them, any errors were harmless because they were cured by the supplemental designations, and the lack of specificity did not prejudice homeowners. *See* C.R.C.P. 61.

## C. Farm Crest and Brewer

■ Homeowners argue that the court erred in (1) accepting the supplemental designations of Farm Crest and Brewer, which did not allege that either "caused the presence of solvents"; and (2) denying their motion for a directed verdict because Brown and RRSI did not present sufficient evidence that Farm Crest and Brewer were responsible for homeowners' injuries. We disagree with both arguments.

## 1. Adequacy

RRSI's supplemental designations alleged that Farm Crest's property had leaking underground storage tanks, and that "Benzene, Toluene, Ethylbenzene, and Xylene" from those tanks were "likely sources of groundwater contamination" in the neighborhood. RRSI also alleged Brewer was "a source of petroleum contamination in the area," and "contributed to the contamination of which Plaintiffs complain." In addition, RRSI incorporated Brown's supplemental designations.

Brown alleged that Farm Crest released petroleum hydrocarbons into the groundwater that then migrated under the Redfield site. It alleged the contamination "contributed to the plume of chemicals alleged in the third amended complaint, and ... contributed to elevated concentrations, if any, of compounds in the air, soil, [and] groundwater in, on, and beneath homes and properties in the vicinity of the Redfield site." Brown also incorporated RRSI's supplemental designations.

Here, homeowners' complaint alleged they were damaged by "toxic chemicals" and did not specify that only chlorinated solvents caused their damages. Brown and RRSI alleged that Farm Crest and Brewer were responsible for the presence of "toxic chemicals" and groundwater contamination which caused homeowners' damages. Though at trial homeowners asserted that their damages were caused only by chlorinated solvents, Brown and RRSI were not required to anticipate homeowners' trial position when designating nonparties, particularly given the general allegations in the complaint. Further, Brown's supplemental designations, which were incorporated by RRSI, alleged facts that connected the releases of petroleum hydrocarbons by Farm Crest and Brewer to elevated levels of contaminants alleged to cause homeowners' injuries.

Homeowners' reliance on *Resolution Trust Corp. v. Deloitte & Touche*, 818 F.Supp. 1406 (D.Colo.1993), is misplaced. There, the defendant "listed the names of the designees[,] in one instance a page and a half of names single spaced from margin to margin"; made general allegations that it intended to relate to all listed names; and did not "attempt to individualize the allegations or to connect each designee with the transactions to which he, she or it was allegedly a party." *Resolution Trust Corp., supra*, 818 F.Supp. at 1408. These inadequate designations stand in stark contrast to the supplemental designations here, which made detailed, individualized allegations about Farm Crest and Brewer, and explained how they were responsible for homeowners' alleged damages.

Therefore, we conclude that the trial court did not err because Brown and RRSI clearly alleged that Farm Crest and Brewer "caused the presence of solvents" and other toxic chemicals of which homeowners complained.

### 2. Sufficiency of the Evidence

 We also reject homeowners' argument that Brown and RRSI did not present sufficient evidence that Farm Crest and Brewer were liable for homeowners' injury, and that they were therefore entitled to a directed verdict as to the liability of these nonparties.

 A jury may only apportion liability to a nonparty when "admissible evidence has been presented that the nonparty contributed to the plaintiff's injury." *Barton, supra,* 938 P.2d at 536. "[W]here a defendant designates a nonparty at fault and presents no evidence of liability, the court should not submit that claim to the jury." *Barton, supra,* 938 P.2d at 536.

We review a trial court's decision to deny a directed verdict de novo. *See City of Westminster v. Centric–Jones Constructors,* 100 P.3d 472, 477 (Colo.App.2003). However, in so doing, we must view all the evidence and inferences therefrom "in the light most favorable to the nonmoving parties." *Morgan v. Bd. of Water Works,* 837 P.2d 300, 302 (Colo. App.1992). A court properly grants a directed verdict when reasonable persons viewing the evidence could not issue a verdict against the moving party. *Morgan, supra,* 837 P.2d at 302.

#### a. Foreseeability

Homeowners allege that Brown and RRSI presented no evidence of foreseeability. We disagree.

RRSI and Brown presented evidence indicating that Farm Crest and Brewer were located up-gradient from the Redfield site, meaning that groundwater flowed toward the Redfield site. From this evidence a jury could infer that Farm Crest and Brewer could foresee that their conduct would cause contamination of other properties and injury to other property owners. *See, e.g., Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 48 (Colo.

1987) ("foreseeability 'includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct'" (quoting 3 F. Harper et al., *The Law of Torts* § 18.2, at 658–59 (2d ed.1986))).

#### b. Breach and Causation

Homeowners also argue that Brown and RRSI presented no evidence that Farm Crest or Brewer breached the required standard of care or caused homeowners' damages. We are not persuaded.

The evidence at trial indicated that inspections found leaking underground storage tanks on both Farm Crest's and Brewer's properties, which emitted gasoline and hydrocarbons into the soil and groundwater near the Redfield site. Brown's expert, Alberto Guttierez, testified that petroleum and hydrocarbons from up-gradient sources would have used up oxygen present in the groundwater under the Redfield site and created an "environment that would increase the 1, 1–DCE produced from PCE and TCE." Homeowners alleged 1, 1–DCE was a chemical that caused their injuries. Guttierez also testified that 1, 2–DCE, a chlorinated solvent, was a common gasoline additive.

This evidence, viewed in the light most favorable to Brown and RRSI, is sufficient to prove that Farm Crest and Brewer breached their "duty not to spill" pollutants, which the court found applied, by emitting petroleum hydrocarbons into the soil and groundwater up-gradient of other properties. This emission in turn caused chlorinated solvents released at the Redfield site and other sites to produce increased elevations of 1, 1–DCE, which caused homeowners' damages.

Therefore, we conclude that the trial court did not err in denying homeowners' motion for a directed verdict as to Farm Crest and Brewer.

### III. Tax Assessments

 Homeowners contend that the trial court abused its discretion in admitting tax assessment valuations of homeowners' properties as evidence of value. They argue that such valuations were irrelevant under CRE

402 and prejudicial under CRE 403. We disagree.

■■■ We review a trial court's decision to admit evidence for abuse of discretion. *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 69 (Colo.App.2004). We will not overturn such a ruling if it is not manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo. App.2003).

■ Under CRE 402, "[a]ll relevant evidence is admissible." Evidence is relevant when it "logically tends to prove or disprove a fact in issue," or "sheds light upon a matter contested." *People ex rel. Yeager*, 93 P.3d 589, 597 (Colo.App.2004).

■ Colorado's Constitution and statutes currently provide that the assessor must determine the "actual value" of the property. *See* Colo. Const. art. X, §§ 3(1)(a), 20(8)(c); § 39–1–103(5)(a), C.R.S.2006. For residential property, actual value must be "determined solely by the market approach to appraisal." Colo. Const. art. X, § 20(8)(c). The appraisal must consider "a representative body of sales, including sales by a lender or government, sufficient to set a pattern," and "similarities and dissimilarities among properties that are compared for assessment purposes." Section 39–1–103(8)(a)(I), C.R.S. 2006. Thus, a determination of actual value for assessment purposes is equivalent to determination of market value. *See Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 203 (Colo.2005).

Homeowners argue that tax assessments are not admissible as relevant evidence of value under *Bankers Trust Co. v. International Trust Co.*, 108 Colo. 15, 24, 113 P.2d 656, 660 (1941). We disagree.

*Bankers Trust* relied on earlier cases, including *Ft. Collins Development Railway v. France*, 41 Colo. 512, 522, 92 P. 953, 956 (1907), which held "[i]t is a notorious fact that the assessment of real property in this state, made by county assessors, affords no criterion whatever of the value of real property." However, when these cases were decided, Colorado's assessment statute provided that "[i]n determining the true value of taxable property ... the market value shall

be the guide." Colo. Sess. Laws 1902, ch. 3, § 60 at 69. The statute did not require actual value to be determined by appraisal until 1964, Colo. Sess. Laws 1964, ch. 94, § 137–1–3(4) at 676, and did not require use of the market approach to appraisal until 1983. Colo. Sess. Laws 1983, ch. 425, § 39–1–103 at 1482. Finally, Colorado's constitutional requirement that the value of residential property be based on an appraisal using the market approach became effective on December 31, 1992. *See Campbell v. Meyer*, 883 P.2d 617, 618 (Colo.App.1994).

These intervening changes in the law since *Bankers Trust* was decided have elevated "market value" to more than merely a "guide" used by assessors. Instead, assessors are now constitutionally required to determine the actual or market value of property with an appraisal using the market approach. As a result, property tax assessments now are relevant evidence of the value of real property. *Cf. Bankers Trust, supra*, 108 Colo. at 24, 113 P.2d at 660; *Ft. Collins Dev. Ry., supra*, 41 Colo. at 522, 92 P. at 956.

Here, Brown and RRSI introduced tax assessment values during cross-examination to challenge homeowners' claims that contamination had decreased their property values by as much as thirty percent. They elicited admissions from class representatives that their property tax assessments indicated the values were increasing rather than decreasing.

The assessments introduced in this case were based on appraisals which determined the actual value of the properties using the market approach to appraisal. Colo. Const. art. X, §§ 3(1)(a), 20(8)(c); § 39–1–103(5)(a). The assessments were relevant because they logically tended to disprove a material fact in issue, namely, that contamination negatively affected homeowners' property values. Because *Bankers Trust* was decided when assessors were not required to use appraisals or the market approach, it did not require the trial court to exclude the assessments.

Homeowners also argue that the assessments did not adequately indicate whether (1) they accounted for contamination; (2) the

assessment had been challenged; (3) the assessor's data collection was accurate; and (4) the comparable sales occurred before or after the disclosure of contamination. These arguments go to the weight of the evidence, not its admissibility, and do not demonstrate that the court abused its discretion in admitting it. *See Wallace v. Target Stores, Inc.*, 701 P.2d 1272, 1272 (Colo.App.1985) (incomplete business records went to weight of evidence); *Yeager Garden Acres, Inc. v. Summit Constr. Co.*, 32 Colo.App. 242, 244–45, 513 P.2d 458, 460 (1973) (incomplete and inaccurate figures relied upon by expert went to weight of opinion).

Homeowners also argue that Brown and RRSI confessed their motion in limine to exclude the assessments and then changed position at trial, thus preventing them from conducting discovery or endorsing an expert. However, RRSI opposed homeowners' motion, and it was not granted before trial. Therefore, homeowners were not entitled to rely upon the exclusion of the assessments at trial.

Therefore, we conclude that the trial court did not abuse its discretion in admitting the tax assessment valuations.

## IV. Testimony of Expert Economist

■ Homeowners contend that because Brown's expert, Dr. Louis Wilde, was not an appraiser, the trial court abused its discretion in admitting testimony from him about "real estate appraisers, appraisal theory and practice," and "the value of properties in the class" along with criticisms of "appraisal methodology of [homeowners'] MAI designated appraisal expert." We disagree.

■ Under CRE 702, a court may admit expert testimony when "(1) the scientific principles at issue are reasonably reliable, (2) the witness is qualified to opine on such principles, and (3) the testimony will be useful to the jury." *People v. Shreck*, 22 P.3d 68, 79 (Colo.2001). The court may exclude expert testimony if it is "unreliable [or] irrelevant, or 'its probative value is substantially outweighed by the danger of unfair prejudice.'" *People v. Ramirez*, 155 P.3d 371, 378 (Colo.2007)(quoting CRE 403 and *People v. Martinez*, 74 P.3d 316, 322–23 (Colo.2003)).

In determining whether a witness is qualified to express an expert opinion, a court's primary consideration "is the witness'[s] actual 'knowledge, skill, experience, training, or education,' rather than the particular title attributed to the witness." *Melville v. Southward*, 791 P.2d 383, 387 (Colo.1990)(quoting CRE 702).

■ We review a trial court's decision to admit expert testimony for abuse of discretion, and will not overturn it unless it is manifestly erroneous. *Ramirez, supra*, 155 P.3d at 380.

Here, Wilde testified in detail about his extensive education, skills, training, and experience in environmental economics and econometrics, an area of study involving the impact of environmental contamination on property values. He also testified about his prior appearances as an expert in cases involving claims that environmental contamination had reduced the value of real property.

Wilde performed an economic analysis of homeowners' property values. He examined the market as a whole, evaluated actual sales data, and concluded that, as a whole, homeowners' properties had not suffered a decrease in value as a result of the contamination. However, he also acknowledged the possibility that "a handful" of transactions occurred at below market value.

Although Wilde was not a real estate appraiser, we conclude the trial court did not abuse its discretion in finding that he was qualified, based on his ample training and experience, to express an expert opinion regarding the effect of environmental contamination on property values in this case. *Cf. Melville, supra*, 791 P.2d at 390 (expert not qualified to testify where plaintiff did not establish an evidentiary foundation that expert orthopedic surgeon was "substantially familiar with the standard of care for podiatric surgery"); *Meier v. McCoy*, 119 P.3d 519, 522 (Colo.App.2004)(trial court did not err in excluding testimony where "witness had not been trained or employed as a police officer *and did not have any other experience that would have qualified him to assess*

*the reasonableness of the use of force"* (emphasis added)).

Homeowners also argue that Wilde was unqualified to critique the opinions of their expert appraiser, Rudy Robinson. Again, we disagree.

Wilde disagreed with Robinson's conclusion that remediation costs would cause homeowners a $13.2 million dollar loss in property value. He relied on evidence that Brown would pay for remediation costs and that homeowners would not be responsible for those costs. He also concluded that remediation costs would "already be reflected in the property value diminution estimates."

Wilde also opined that Robinson's damage estimates were erroneous and testified in detail about the bases for his opinion.

We conclude that Wilde was not precluded from testifying about Robinson's conclusions simply because he was not an appraiser. Wilde's education, skills, training, and experience enabled him to criticize Robinson's conclusions from the perspective of an expert environmental economist. Homeowners provide no case law, and we are not aware of any, that prohibits experts with backgrounds in different disciplines from criticizing one another's conclusions so long as they have sufficient education, skills, training, and experience. *See Melville, supra,* 791 P.2d at 387.

Homeowners' reliance upon *Heller v. American Industrial Properties Reit,* 156 F.Supp.2d 645 (W.D.Tex.2000), and *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036 (5th Cir.1998), is misplaced for two reasons. First, only decisions of the United States Supreme Court are binding on Colorado courts on questions of federal law. *See People v. Barber,* 799 P.2d 936, 940 (Colo.1990). Second, neither case considered an analogous situation in which an expert economist with relevant experience testified to the effect of environmental contamination on the value of multiple properties. *Cf. Hidden Oaks, supra,* 138 F.3d at 1050; *Heller, supra,* 156 F.Supp.2d at 649.

Homeowners' reliance on *Melville, supra,* and *Meier, supra,* is likewise misplaced. In

*Melville,* our supreme court determined that an orthopedic surgeon unfamiliar with the standard of care applicable to a podiatrist was unqualified to testify regarding that standard of care. *Melville, supra,* 791 P.2d at 390. In *Meier,* a division of this court concluded that the trial court did not err in excluding expert testimony by a witness who had never been employed in law enforcement, and had no other experience which would qualify him to "assess the reasonableness of the use of force from the perspective of a police officer." *Meier, supra,* 119 P.3d at 522. This case is not analogous.

Therefore, we conclude that the trial court did not abuse its discretion in admitting expert testimony by Wilde.

## V. Testimony of Unendorsed Expert

Homeowners argue that the trial court erred in admitting unendorsed expert testimony by Brown's witness, David Folkes. We conclude that any error was harmless.

### A. Standard of Review

 Under C.R.C.P. 37, a party who fails to disclose expert opinion testimony as required by C.R.C.P. 26, without substantial justification, may not present the nondisclosed evidence at trial unless the failure to disclose is harmless. C.R.C.P. 37; *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 977 (Colo.1999). The nondisclosing party has the burden to show its failure to disclose was substantially justified or harmless. *Todd, supra,* 980 P.2d at 978.

> In evaluating whether a failure to disclose evidence is harmless under Rule 37(c), the inquiry is not whether the new evidence is potentially harmful to the opposing side's case. Instead, the question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence.

*Todd, supra,* 980 P.2d at 979.

 "Trial courts have wide latitude to accept or refuse evidence." *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r,* 105 P.3d 595, 610 (Colo.2005). Thus, as pre-

viously noted, we review a trial court's decision to admit evidence for abuse of discretion. *Vista Resorts, Inc., supra,* 117 P.3d at 69. Likewise, we review a trial court's decision to impose sanctions under C.R.C.P. 37 for abuse of discretion. *See Genova v. Longs Peak Emergency Physicians, P.C.,* 72 P.3d 454, 465–66 (Colo.App.2003).

### B. Analysis

Here, it is undisputed that the court did not permit Brown's designation of Folkes as an expert. Brown called Folkes to testify at trial, homeowners objected to his offering expert testimony, and the court allowed him to testify as a fact witness. It instructed the jury that though he had the qualifications of an expert, he was not an expert witness and was therefore "not entitled to render opinions." Homeowners argue that the court erred in allowing Folkes to testify about (1) contamination; (2) vapor intrusion; (3) the remediation system; and (4) other opinions. We find no basis for reversal.

### 1. Contamination

Homeowners argue that Folkes offered opinion testimony regarding "how contaminant levels indicated the travel of the plume," the "correlation between soil vapor and indoor air concentrations" and "soil vapor samples correlations to groundwater," his "knowledge that solvents in groundwater could enter indoor air," "EPA's removal of the [1, 1–]DCE cancer slope factor," "the practice to resample data," and "demonstratives of [the] barrier [remediation] system" installed by Brown.

Homeowners do not explain how Folkes's testimony regarding these issues pertained to material or disputed issues in the case, or how the introduction of this testimony surprised or prejudiced them. While homeowners argue generally that they were unable to prepare for cross-examination and unable to cross-examine Folkes for fear of "opening the door," they do "not specify what additional information [they] could have elicited on cross-examination or how the absence of such information caused [them] prejudice. Nor did [they] ask for a continuance." *Ajay Sports, Inc. v. Casazza,* 1 P.3d 267, 275 (Colo.App.2000)(concluding undisclosed expert testimony was not prejudicial).

### 2. Vapor Intrusion

Homeowners argue that Folkes improperly offered opinion testimony about his knowledge that solvents could enter indoor air, and that the testimony enabled Brown to argue in closing that "it was Folkes'[s] opinion that the vapor intrusion pathway was not perceived as a risk until 1997/1998," without fair cross-examination. We conclude this evidence was harmless.

First, this evidence was cumulative of testimony by Brown's expert, Guttierez, and was not prejudicial. *See Briola v. Roy,* 170 Colo. 97, 104, 459 P.2d 288, 291–92 (1969) (admission of evidence harmless where complaining party elicited identical testimony from other witnesses); *Gonzales v. Guber,* 476 P.2d 581, 581 (Colo.App.1970)(not published pursuant to C.A.R. 35(f))(cumulative testimony not prejudicial). Second, homeowners had an adequate opportunity to defend against this evidence with their expert, Steven Amter, and the trial court could have concluded it was harmless. *See Todd, supra,* 980 P.2d at 979. Finally, to the extent Folkes offered opinion testimony, the court's instruction cured any prejudice. *See Hawley v. Mowatt,* 160 P.3d 421, 426 (Colo.App.2007)(appellate court must presume jury followed court's instruction).

### 3. Remediation System

Homeowners also argue that Folkes was improperly allowed to offer his opinions about the "effectiveness of [the] barrier system." Again, we conclude that any error in allowing this evidence was harmless.

Guttierez testified that bioremediation would reduce the amount of time necessary to pump and treat water down-gradient. He testified that he had reviewed Folkes's calculations about the time necessary for cleanup, and had determined that cleanup would be even faster than Folkes's estimates. Thus, Folkes's testimony was cumulative. *See Briola, supra,* 170 Colo. at 104, 459 P.2d at 291–92; *Gonzales, supra,* 476 P.2d at 581.

Further, homeowners had an adequate opportunity to defend against Folkes's testimony. Their expert, Paul Rosasco, opined that the barrier remediation system was ineffective:

> the proposed remediation as presented by Brown group is flawed due to the underlying errors in the calculations that they performed that resulted in significant underestimates of the time to remediate and also in a failure to recognize the limitations of the bioremediation system relative to the chlorinated solvents that are present in the neighborhood.

He also testified that the barrier system had not reduced concentrations of contaminants in the neighborhood during its "first several years of operation"; certain solvents (TCA and PCE) showed no "response to the system"; it was documented in the literature that the bioremediation would not address PCE; and the barrier system would "take over 100 years to clean up" the down-gradient groundwater. This evidence rebutted and rendered harmless Folkes's testimony that the remediation system was effective. *See Todd, supra,* 980 P.2d at 979.

And again, to the extent Folkes offered opinion testimony, the court's instruction cured any prejudice. *See Hawley, supra,* 160 P.3d at 426.

### 4. Other Opinions

Homeowners' arguments that Folkes expressed other undisclosed opinions were not raised in their opening brief. Therefore we will not address them. *See Colo. Korean Ass'n, supra,* 151 P.3d at 629.

In sum, we conclude that the trial court did not abuse its discretion in admitting Folkes's testimony.

### VI. Remediation Reserves

Homeowners argue that the trial court abused its discretion in denying their motion to compel, which requested documents relating to remediation reserves, and in admitting testimony regarding Brown's future remediation commitments at the Redfield site. We conclude that the trial court did not abuse its discretion in denying homeowners' motion to compel, and that they did not preserve their objection to testimony about remediation commitments.

### A. Discovery

■ We review a trial court's discovery rulings for abuse of discretion. *Stokes v. Denver Newspaper Agency, LLP,* 159 P.3d 691, 696 (Colo.App.2006).

■ Here, homeowners moved to compel production of documents related to Brown's remediation reserve accounts. Homeowners indicated that during the supplemental depositions they had learned about the existence of a reserve account, the fact that money was added to the account from time to time, the existence of monthly and annual accounting expenditures related to the Redfield site, Brown's annual budget for future expenditures at the Redfield site, and a three-year plan for the site.

The discovery master did not order discovery of the documents, finding that "budgets should provide sufficient financial information," and that the reserve account information was privileged. The trial court did not alter the discovery master's ruling. At trial, a Brown employee testified, in response to a question from homeowners' counsel:

> Reserve is basically where we estimate out into the future what we think our expenditures are going to be going forward. Then generally speaking we book those as an expense in the current period and put that on the balance sheet. So that's basically money that we'll spend into the future.

During cross-examination, the employee testified twice, without objection, that Brown had set aside $8 million for future remediation at the Redfield site. After his testimony, Brown disclosed a document showing that the reserve account contained approximately $8 million. The court reviewed both redacted and unredacted versions of the document and decided not to admit it.

Homeowners argue that the trial court's decision prejudiced them because they were unable to use discovery to determine "[w]hether the 'commitment' had actually been made, [and] how it was to be funded, if at all," or to conduct discovery to impeach

"Brown's claim that it would continue to remediate." As a result, they argue they were "unable to challenge Brown's critical defense."

Brown was not required to disclose the reserve information before trial pursuant to C.R.C.P. 26 because, though it may have been relevant to homeowners' claims, it was privileged. *See* C.R.C.P. 26(a)(1)(B). While homeowners allege there was no basis for the privilege, they cite no authority supporting that assertion. *See Castillo v. Koppes-Conway,* 148 P.3d 289, 291 (Colo.App.2006)(party who does not refer to evidence or authority in support of argument does not present a cogent argument for review).

Although homeowners point to the lack of a Bates number on the reserve document to indicate that Brown's assertion of privilege was groundless, they do not cite any portion of the record where they raised this argument before the trial court. We will not address it for the first time on appeal. *See Kinney v. Keith,* 128 P.3d 297, 310 (Colo.App. 2005).

Therefore, we conclude that the trial court did not abuse its discretion in denying homeowners' motion to compel discovery of the reserve information.

### B. Admission of Testimony

■ A party must object to evidence when it is offered. *Blue Cross v. Bukulmez,* 736 P.2d 834, 838 (Colo.1987). If a party makes no contemporaneous objection to the introduction of evidence, we will not review the alleged error on appeal. *Adler v. Adler,* 167 Colo. 145, 150, 445 P.2d 906, 908 (1968).

■ Here, homeowners argue that the court erred in admitting testimony that Brown had committed money to future remediation at the Redfield site. However, this testimony was elicited by counsel for homeowners on October 15, 2003, and homeowners did not object to it until October 27, 2003.

Therefore, homeowners failed to preserve their allegation of error.

### VII. Advice of Counsel and Consultants

Homeowners contend that because Brown did not plead its reliance on advice of counsel or advice of consultants as an affirmative defense, the trial court erred in admitting Brown's evidence that it relied on such advice and instructing the jury that it could consider such evidence with respect to homeowners' punitive damages claim. We disagree.

### A. Evidence of Reliance

■ C.R.C.P. 8(c) requires a party to affirmatively set forth affirmative defenses and avoidances, along with "mitigating circumstances to reduce the amount of damage." A party's failure to plead an affirmative defense in its responsive pleading constitutes a waiver of that defense. *Duke v. Pickett,* 168 Colo. 215, 218, 451 P.2d 288, 290 (1969).

■ "[A]n affirmative defense is a legal argument that a defendant, who is capable of being sued, may assert to require the dismissal of a claim or to prevail at trial." *State v. Nieto,* 993 P.2d 493, 507 (Colo.2000); *see also People v. Huckleberry,* 768 P.2d 1235, 1238 (Colo.1989) ("an affirmative defense basically admits the doing of the act charged but seeks to justify, excuse or mitigate it").

■ Though not enumerated in C.R.C.P. 8(c), "advice of counsel, properly taken and relied upon in good faith, is [an affirmative] defense *to a suit for malicious prosecution.*" *Montgomery Ward & Co. v. Pherson,* 129 Colo. 502, 511, 272 P.2d 643, 647 (1954) (emphasis added). It is also an affirmative defense that must be pled against a claim for slander of title. *See Hein Enters., Ltd. v. San Francisco Real Estate Investors,* 720 P.2d 975, 980 (Colo.App.1985). Advice of consultants is not listed among the affirmative defenses in C.R.C.P. 8(c), and we are aware of no law, and homeowners cite to none, providing that advice of consultants is an affirmative defense which must be pled.

Here, homeowners do not assert a claim for malicious prosecution or slander of title, and do not submit any authority indicating that reliance on advice of counsel or consultants is an affirmative defense that must be

pled in a case involving claims for negligence, nuisance, trespass, and punitive damages. They also do not demonstrate why proof of reliance on advice of counsel or consultants would require dismissal of any of their claims, or allow Brown to prevail at trial. *See Nieto, supra,* 993 P.2d at 507.

Homeowners also contend that reliance on advice of counsel and consultants was a mitigating circumstance that "Brown was required to plead under C.R.C.P. 8(c)." However, this evidence was not relevant, and was not used, to reduce the amount of homeowners' damages. *Cf. Meeker v. Post Printing & Publ'g Co.,* 55 Colo. 355, 358–59, 135 P. 457, 458–59 (1913)(denial of malice was not a "mitigating circumstance").

Because reliance on advice of counsel or consultants is not an affirmative defense or mitigating circumstance, Brown was not required to plead it in its answer.

### B. Instruction

We further conclude that the trial court did not err in admitting the reliance evidence and instructing the jury that it could consider that evidence in regard to punitive damages.

 We will not reverse a trial court's decision not to give jury instructions "[a]bsent a showing of substantial, prejudicial error." *Vista Resorts, Inc., supra,* 117 P.3d at 70. A trial court has substantial discretion to determine both the form and the style of jury instructions, and we will not reverse its decision unless it abuses its discretion. *Woznicki v. Musick,* 119 P.3d 567, 573 (Colo.App. 2005). We also review a trial court's decision to reject instructions that are not contained in the pattern jury instructions, CJI–Civ. 4th, for abuse of discretion. *Vista Resorts, Inc., supra,* 117 P.3d at 70.

To recover punitive damages, homeowners were required to prove that Brown caused their injury under circumstances attended by "fraud, malice, or willful and wanton conduct." Section 13–21–102(1)(a), C.R.S.2006; *Tri–Aspen Constr. Co. v. Johnson,* 714 P.2d 484, 486 (Colo.1986) (exemplary damages may be awarded when a defendant causes the plaintiff's injury "with an evil intent, and with the purpose of injuring the plaintiff, or

with such a wanton and reckless disregard of his rights as evidence a wrongful motive" (quoting *Frick v. Abell,* 198 Colo. 508, 511, 602 P.2d 852, 854 (1979))).

 Brown's reliance on the advice of counsel and consultants was relevant to the issue of its intent in engaging in the acts that led to homeowners' damages. *See Tri–Aspen Constr. Co., supra,* 714 P.2d at 487–88 (testimony that company did not receive a recommendation to install a drain from a soils engineer, and that it relied on the absence of the recommendation in deciding not to install the drain, rendered evidence of "evil intent or wrongful motive" conflicting and insufficient to prove exemplary damages claim beyond a reasonable doubt). Such reliance was only "one factor to be considered" and "not determinative of the issue whether and to what extent exemplary damages can be awarded." *Montgomery Ward & Co. v. Andrews,* 736 P.2d 40, 48 (Colo.App.1987).

In sum, because reliance on advice of counsel or consultants was only relevant to, not dispositive of, the element of intent in homeowners' punitive damages claim, and proof of such reliance would not require that Brown prevail on, or the court dismiss, homeowners' claim, it was not an affirmative defense. *See Nieto, supra,* 993 P.2d at 507; *Daniel v. M.J. Dev., Inc.,* 43 Colo.App. 92, 95, 603 P.2d 947, 949 (1979) (where plaintiffs were required to prove notice as a part of their prima facie case, defendants were not required to plead inadequate notice as an affirmative defense). Thus, we conclude the trial court did not abuse its discretion in admitting testimony related to Brown's reliance, or in instructing the jury that it could consider reliance with regard to homeowners' punitive damage claim. It also did not err in rejecting homeowners' alternative non-CJI-Civ. instruction. *See Vista Resorts, Inc., supra,* 117 P.3d at 70.

### VIII. Trespass Instruction

Homeowners next contend that the trial court erred in instructing the jury regarding trespass. We disagree.

Initially, we note that because homeowners prevailed on their negligence claim against

Brown, any error in the trespass instruction, an alternative theory of liability as to which no additional damages were recoverable, is harmless as against Brown. *See S. Park Aggregates, Inc. v. Nw. Nat'l Ins. Co.,* 847 P.2d 218, 222 (Colo.App.1992); *Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424, 427 (Colo.App.1985).

However, homeowners argue that the instruction was not harmless because it prevented them from recovering against RRSI. Therefore, we must determine whether the trespass instruction was erroneous.

As we noted above, a trial court has substantial discretion to determine both the form and the style of jury instructions, and we will not reverse its decision unless it abuses its discretion. *Woznicki, supra,* 119 P.3d at 573.

■■■ "Instructions should include only correct statements of law by which the evidence is to be examined and applied." *Meier, supra,* 119 P.3d at 524. Though a jury instruction maybe erroneous if it "misleads or confuses the jury," when the instructions collectively "properly inform the jury of the law, no reversible error can be found." *Woznicki, supra,* 119 P.3d at 573. We also will not reverse the trial court in the absence of a prejudicial error, which exists only when the "record shows that a jury might have answered differently if a proper instruction had been given." *Woznicki, supra,* 119 P.3d at 573.

The trespass instruction given by the court in this case read, as relevant here:

> For these plaintiffs to recover from one or both of the defendants on their claim of trespass, you must find that each of the following has been proved by a preponderance of the evidence:
>
> 1. The plaintiffs were the owners or occupants of property in the class geographic area; and
> 2. One or both of the defendants intentionally undertook an activity (or activities) that in the usual course of events caused a chemical(s) to come upon plaintiffs' property in the form of indoor air, soil, and/or groundwater contamination.

The jury found for Brown and RRSI on homeowners' trespass claim.

Homeowners contend that the instruction was erroneous because (a) it added the element of intent, which is not required for trespass; and (b) the court added "in the usual course of events" to the stock instruction, which confused and misled the jury. We disagree with both arguments.

### A. Intent

■■■ Homeowners argue that the trial court erred in instructing the jury that trespass included an element of intent. We disagree.

■■■ "Trespass is an intentional tort." 87 C.J.S. *Trespass* § 6 (2000); *see also* Dan B. Dobbs, *The Law of Torts* 9596 (2000); Restatement (Second) of Torts § 158 (1965). Colorado's pattern jury instruction reflects an intent requirement for trespass. It requires a plaintiff to prove "[t]he defendant *intentionally* (entered upon) (caused another to enter upon) (caused [insert appropriate description] to come upon)" his or her property. CJI–Civ. 4th 18:1 (2006)(emphasis added).

Homeowners argue that the intent requirement in CJI–Civ. 4th 18:1 diverges from established Colorado law. We are not persuaded.

■■■ A person is liable for trespass in Colorado if he or she "intentionally enter[s] the land possessed by someone else, or caus[es] a thing or third person to enter the land." *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 389 (Colo.2001); *see also Gerrity Oil & Gas Corp. v. Magness,* 923 P.2d 261, 266 (Colo.App.1995), *rev'd in part on other grounds,* 946 P.2d 913 (Colo.1997); *Burt v. Beautiful Savior Lutheran Church,* 809 P.2d 1064, 1067 (Colo.App.1990) (noting that, though some jurisdictions distinguish between intentional and negligent trespass, Colorado does not recognize negligent trespass); *Miller v. Carnation Co.,* 33 Colo.App. 62, 67–68, 516 P.2d 661, 664 (1973)(quoting Restatement, *supra,* § 158).

However, "liability for trespass requires only an intent to do the act that itself constitutes, or inevitably causes, the intrusion." *Burt, supra,* 809 P.2d at 1067.

Citing the supreme court's language in *Hoery v. United States,* 64 P.3d 214, 217 (Colo.2003), that "[t]he elements for the tort of trespass are a physical intrusion upon the property of another without the proper permission from the person legally entitled to possession of that property," homeowners argue that "[i]ntent to commit a trespass is not an element of the tort." To the contrary, *Hoery* reaffirmed the intent requirement for trespass, holding that "[t]he intrusion can occur when an actor intentionally enters land possessed by someone else, or when an actor causes something else to enter the land." *Hoery, supra,* 64 P.3d at 217. In fact, when describing the elements of trespass, the supreme court in *Hoery* relied upon *Public Service Co., supra,* and Restatement § 158, both of which require intent to cause a thing to enter the plaintiff's property. *See Hoery, supra,* 64 P.3d at 217; *see also Pub. Serv. Co., supra,* 27 P.3d at 389.

Therefore, we conclude *Hoery* did not obviate the intent requirement for trespass, CJI–Civ. 4th 18:1 properly includes an intent requirement, and the trial court did not abuse its discretion by giving a trespass instruction that required proof of intent.

### B. Usual Course of Events

Homeowners also argue that the court abused its discretion by adding language to the trespass instruction referring to "the usual course of events." We conclude that the instruction was not erroneous and that any jury confusion was cured by the court's supplemental instructions.

In Colorado, "[a] landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property." *Hoery, supra,* 64 P.3d at 217 (quoting *Miller, supra,* 33 Colo.App. at 68, 516 P.2d at 664).

The CJI–Civ. 4th notes on use require a court to modify the stock trespass instruction in cases involving "affirmative conduct other than a direct entry." *See* CJI–Civ 4th 18:1 n. 7. That portion of the notes references the "in the usual course of events" language. And appellate courts have generally discussed this language when considering trespass claims involving indirect intrusions by objects or things. *See, e.g., Hoery, supra,* 64 P.3d at 216 (groundwater contamination); *Pub. Serv. Co., supra,* 27 P.3d at 381, 390 (noise, radiation waves, and electromagnetic frequencies); *Burt, supra,* 809 P.2d at 1065, 1067 (water damage); *Cobai v. Young,* 679 P.2d 121, 124 (Colo.App.1984) (sliding snow); *Docheff v. City of Broomfield,* 623 P.2d 69, 70–71 (Colo.App.1980)(discharge of public water onto private property); *Miller, supra,* 33 Colo.App. at 64, 68, 516 P.2d at 662, 664 (flies attracted by chicken waste). While it did not exist at the time of trial, the most recent trespass intent instruction provides that a person intentionally causes a foreign substance to enter property "when it is his or her purpose to do the act that in the natural course of events results in the intrusion." CJI–Civ. 4th 18:2 (2006).

It is apparent from three questions asked by the jury that it was, at least initially, somewhat confused by the "usual course of events" language in relation to the intentional act requirement for trespass. However, the court's clarifying instructions in response to those questions were correct statements of the law, and there is nothing to indicate that the jury's verdict resulted from any error in the court's initial or supplemental instructions. *See Woznicki, supra,* 119 P.3d at 574.

Therefore, we conclude that the trial court's trespass instruction was not erroneous.

### IX. Motion for New Trial

Homeowners contend that the trial court abused its discretion in denying their motion for a new trial. They argue that the court should have granted the motion under C.R.C.P. 60(b)(2) based on Brown's misconduct, or under C.R.C.P. 59(a)(1) and (d)(1)-(3) based on irregularity and surprise in the proceeding. We disagree.

**604**

### A. C.R.C.P. 60(b)(2) Misconduct

██ Under C.R.C.P. 60(b)(2), a party may obtain relief from judgment based on "fraud, ... misrepresentation, or other misconduct of an adverse party." The moving party has "the burden of establishing the grounds for relief under C.R.C.P. 60(b) by clear, strong, and satisfactory proof." *Sharma v. Vigil*, 967 P.2d 197, 199 (Colo.App. 1998).

Because C.R.C.P. 60(b)(2) is similar to its federal counterpart, Fed.R.Civ.P. 60(b)(3), case law interpreting the federal rule is persuasive in analysis of the Colorado rule. *See Forbes v. Goldenhersh*, 899 P.2d 246, 249 (Colo.App.1994)(C.R.C.P.56); *see also Aspen Skiing Co. v. Peer*, 804 P.2d 166, 174 (Colo. 1991) (relying on federal decisions in interpreting C.R.C.P. 60(b)(2)).

██ Discovery violations can provide grounds for relief from judgment. *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988). However, to justify relief, "the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Anderson, supra*, 862 F.2d at 924; *see also Aspen Skiing Co., supra*, 804 P.2d at 174 (misconduct justifies a new trial where it "impaired a party's ability to fairly and fully litigate a material issue in the case"). "Substantial impairment may exist, for example, if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Anderson, supra*, 862 F.2d at 925.

██ However, "[t]he appropriate remedy for parties who uncover discovery violations is 'not to seek reversal after an unfavorable verdict but a request for continuance at the time the surprise occurs.'" *U.S. Fid. & Guar. Co. v. Baker Material Handling Corp.*, 62 F.3d 24, 29 (1st Cir.1995) (quoting *Szeliga v. Gen. Motors Corp.*, 728 F.2d 566, 568 (1st Cir.1984)).

██ The trial court is in the best position to evaluate misconduct and the effect on the trial. *See Anderson v. Beatrice Foods Co.,*

900 F.2d 388, 392 (1st Cir.1990) ("In a long, complicated, factbound case like this one, the trial judge has a unique coign of vantage."); *Aspen Skiing Co., supra*, 804 P.2d at 175. As a result, we review a trial court's decision on a C.R.C.P. 60(b) motion for abuse of discretion. *Domenico v. Sw. Props. Venture*, 914 P.2d 390, 392 (Colo.App.1995).

Prior to our analysis, we note that the section of homeowners' briefs concerning their motion for a new trial reflects a shotgun approach setting forth a multitude of arguments with little analysis. Compounding this, in their reply brief, homeowners do not distinguish between the errors they contend merit relief under C.R.C.P. 59 and 60. We will not address these underdeveloped arguments. *See Mauldin v. Lowery*, 127 Colo. 234, 236, 255 P.2d 976, 977 (1953); *Westrac, Inc. v. Walker Field*, 812 P.2d 714, 718 (Colo. App.1991). However, we will address homeowners' arguments that are adequately developed.

We also note that in this portion of their briefs, homeowners argue that they documented the prejudice they suffered in their motion for new trial, reply, supplemental authorities, motion for sanctions, and sanction-related hearings. However, we will consider only the particular sources set forth in their briefs because we will not search through the record for support of homeowners' arguments. *See Mauldin, supra*, 127 Colo. at 236, 255 P.2d at 977; *Castillo, supra*, 148 P.3d at 291.

#### 1. Improper Standard

Homeowners argue that the trial court improperly denied their motion for a new trial based upon its finding that it was "unconvinced that the trial's outcome was so affected as to justify a new trial." We are not persuaded.

██ As discussed above, a party may obtain a new trial by demonstrating that misconduct by another party substantially interfered with his or her ability "fully and fairly to prepare for and proceed at trial." *Anderson, supra*, 862 F.2d at 924; *see also Aspen Skiing Co., supra*, 804 P.2d at 174. To obtain relief from judgment under the

federal rule, the moving party is not required to demonstrate that the misconduct altered the result. *See Anderson, supra,* 862 F.2d at 924. However, under the Colorado rule, a court may consider whether misconduct is "result altering" when determining whether to grant relief based upon fraud or misconduct. *See S.E. Colo. Water Conservancy Dist. v. Cache Creek Mining Trust,* 854 P.2d 167, 172 (Colo.1993).

Here, even if we were to rely on the federal rather than the Colorado standard, we would find no abuse of discretion. The trial court found that homeowners had not demonstrated Brown's misconduct substantially impeded their ability "fully and fairly to prepare for and proceed at trial." *Anderson, supra,* 862 F.2d at 924; *see also Aspen Skiing Co., supra,* 804 P.2d at 174. The mere fact that the court referred to the "outcome" in its findings does not indicate that it required homeowners to prove that the misconduct was result altering, or that it did not consider whether Brown's misconduct substantially interfered with homeowners' ability to prepare for and proceed at trial. Rather, it found, with record support, that the impact of Brown's discovery misconduct "was reasonably ameliorated before and during trial."

Therefore, we conclude that the trial court did not abuse its discretion in denying homeowners' motion based upon its finding that it was "unconvinced that the trial's outcome was so affected as to justify a new trial."

### 2. Misconduct

■ Homeowners argue that the trial court should have granted a new trial based on Brown's misconduct. We disagree.

The trial court found that Brown engaged in certain intentional discovery misconduct. Homeowners urge us to presume, contrary to the trial court's additional finding that the misconduct was ameliorated, that Brown's intentional misconduct substantially impaired their ability to prepare for and proceed at trial. *See Anderson, supra,* 862 F.2d at 925. We decline to do so.

There is no reason to presume such substantial impairment in this case because the intentional misconduct occurred, prior to the court-granted continuance, "in depositions, in answering written discovery, in the privilege logs, and even apparently in interactions (formal and informal) with other counsel in the case." The court ordered a six-month continuance, reopened discovery on a limited basis, and imposed evidentiary sanctions on Brown. It later found that Brown's discovery misconduct was "reasonably ameliorated before and during trial." Given this finding and the fact that the court evaluated the withheld discovery materials and was able to observe and assess homeowners' presentation at trial, we need not presume that the misconduct substantially interfered with homeowners' ability to prepare for and present their case at trial. *See Anderson, supra,* 862 F.2d at 926 (noting that "the documents themselves may constitute clear and convincing proof that no prejudice inured").

Because utilizing a presumption is improper in this case, we will instead review the trial court's determination that the impact of Brown's misconduct was reasonably ameliorated.

### 3. Full and Fair Preparation and Presentation

Homeowners set forth many different allegedly prejudicial actions by Brown that they argue merit relief from judgment under C.R.C.P. 60(b)(2). We disagree.

#### a. Nondisclosures

Homeowners argue that Brown failed to disclose thousands of documents that purportedly were protected by claims of privilege. While homeowners assert that these claims lack any basis, they have pointed to no evidence in the record indicating that the documents were not privileged or should have been disclosed. Therefore, we will not address this argument. *See Mauldin, supra,* 127 Colo. at 236, 255 P.2d at 977; *Castillo, supra,* 148 P.3d at 291.

■ Homeowners also argue that they were unable to challenge the discovery master's privilege rulings because the rulings were issued immediately before trial, and litigation on the privilege logs continued during trial. However, homeowners point to no

erroneous rulings by the discovery master, and they do not explain what errors could have been established if they had additional time. Therefore, they have not shown any prejudice. *See* C.R.C.P. 61.

### b. Late Disclosures

■ Homeowners also argue that Brown made several late disclosures, including documents related to a consultant's work, field notes, remediation plans, and an interview memo produced three weeks prior to trial that contained its past president's statement that it was "nobody's business where we dumped it." In their reply brief, homeowners also allege that Brown made untimely disclosures of information about its $8 million remediation reserve, facts of dumping leaks and spills, attorney communications, and cover sheets from investigative memoranda. Homeowners argue that the late production of these documents substantially interfered with their preparation for trial because they could not review many of these documents, use them during trial, conduct discovery based upon them, have experts rely on them, or use them to contest Brown's or RRSI's claims. They also argue that Brown used the lack of documentation to attack one of their experts.

Despite the late disclosure of these documents, homeowners elected to proceed to trial and argue that Brown had covered up and delayed cleaning up environmental contamination. They did not ask for a continuance, nor did they request a mistrial. The jury found for homeowners on their negligence claim. Under such circumstances, homeowners are not entitled to a new trial. *See Tiller v. Baghdady*, 294 F.3d 277, 281 (1st Cir.2002) (no new trial where plaintiff made the conscious choice to go ahead, despite discovery misconduct, on the strength of her own evidence); *U.S. Fid. & Guar. Co.*, *supra*, 62 F.3d at 29 (plaintiffs not entitled to a new trial where, in response to discovery materials produced immediately before trial, they opted to go ahead with their "cover up" trial strategy and not to request a continuance); *Harduvel v. Gen. Dynamics Corp.*, 801 F.Supp. 597, 609–10 (M.D.Fla.1992) (plaintiffs not entitled to a new trial, despite nondisclosure of "two thousand exhibits," where plaintiffs prevailed, they would not have deviated from their successful trial strategy, and they offered only conclusory allegations in support of their motion); *Aspen Skiing Co.*, *supra*, 804 P.2d at 173 (decision to pursue a particular theory at trial, and forgo a different theory that relies on late disclosed evidence, vitiates new trial claim).

Further, homeowners do not sufficiently explain why they were unable to examine the documents, even given the brief amount of time, and why they were unable to use the memorandum or remediation plan, both of which were produced to them before trial. *See Spurgin–Dienst v. United States*, 359 F.3d 451, 456–57 (7th Cir.2004) (not an error to deny motion for a new trial where documents available before trial but not used); *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir.1972) (new trial not merited where defendant produced documents at trial and plaintiff did not use them). Nor do they explain how they would have been able to use any of the other documents had they been produced earlier. *See Salazar v. People*, 870 P.2d 1215, 1221–24 (Colo.1994) (in a criminal case, a new trial was not required where late-disclosed evidence did not advance defendant's theory of defense and was not material, and defendant failed to request a continuance). Homeowners also do not explain why further preparation of their expert using the documents would have been useful. And the record reflects that homeowners cross-examined witnesses with the remediation plan.

Homeowners also do not explain what avenues of discovery they would have pursued had they had the disclosures on time. *See Static Control Components, Inc. v. Darkprint Imaging, Inc.*, 240 F.Supp.2d 465, 479–80 (M.D.N.C.2002)(denial of motion for new trial based on discovery misconduct not an abuse of discretion where the additional discovery requested would not have been relevant, and moving party did not ask for a continuance, or point "to any specific research it would have conducted," and only "presented vague allegations of lost research and investigations"). Homeowners' speculation that they would have found relevant,

useful evidence is insufficient to merit granting a new trial. *See Beatrice Foods Co., supra,* 900 F.2d at 392 (trial court did not err in refusing to grant a new trial based upon plaintiffs' speculation that they would find evidence helpful to their claim).

We reject homeowners' argument that the six-month continuance did not alleviate the prejudice from Brown's misconduct. During the continuance, the parties conducted additional discovery, but Brown was not allowed to use any of the new information at trial. Homeowners never expressed at any time before trial the need to conduct additional discovery, nor did they request another continuance to prepare. *See U.S. Fid. & Guar. Co., supra,* 62 F.3d at 29. Because the continuance provided homeowners with an opportunity to cure the prejudice from Brown's misconduct, the trial court did not abuse its discretion in denying homeowners' motion. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993–94 (10th Cir.1999); *Mahan v. Capitol Hill Internal Med. P.C.,* 151 P.3d 685, 689 (Colo. App.2006) (court did not abuse its discretion in denying a motion for a new trial where it took curative measures to alleviate prejudice).

### c. False Testimony

■ Homeowners also argue that the trial court abused its discretion in denying their motion for a new trial because several witnesses changed their testimony at trial from their depositions. We disagree.

■ To order a new trial on the basis of perjury, a trial court must find that "the discrepancies or inaccuracies in the prior testimony were not the result of the usual shortcomings inherent in human perception and memory but rather were the result of a willful fabrication of evidence bearing on a material issue." *Aspen Skiing Co., supra,* 804 P.2d at 174.

Although the trial court made clear at the sanctions hearing that it did not believe these witnesses' trial testimony, it was not required to grant a new trial for that reason. The jury, not the court, was charged with evaluating the credibility or truthfulness of witness testimony. *See Burlington N. R.R. v. Hood,* 802 P.2d 458, 468 n. 3 (Colo.1990).

Further, homeowners made no showing that the testimony was willfully fabricated, as opposed to merely false or inaccurate. *See Aspen Skiing Co., supra,* 804 P.2d at 174. And because the changes in the witnesses' testimony admitted a fact that homeowners intended to prove at trial, knowledge of spills at the Redfield site, and homeowners knew of the inaccuracies when the witnesses testified at trial, the trial court did not abuse its discretion in denying their new trial motion. *See Walsh v. McCain Foods Ltd.,* 81 F.3d 722, 726 (7th Cir.1996)(no abuse of discretion where defendant admitted facts plaintiff intended to prove at trial, and where changed testimony was predictable); *Ojeda–Toro v. Rivera–Mendez,* 853 F.2d 25, 29 (1st Cir. 1988)(no abuse of discretion where movant "has knowledge of inaccuracies in an opponent's representations at the time of the alleged misconduct").

### d. Presentation

■ Homeowners argue that Brown's misconduct interfered with the presentation of their case. They argue that they had to limit their opening statement to prevent Brown from using withheld information; were unable to present evidence of knowledge of contamination in an orderly fashion; decided not to call a witness, Roger Geer, because he denied knowledge of spills in his deposition; had to limit their examination of their expert, Amter; were surprised by Folkes's expert testimony; and were put in the position of appearing to the jury to obstruct the trial and cause delay. They further argue that trial testimony turned into discovery depositions, and testimony of a certain witness was interrupted.

We conclude that homeowners' allegations are not sufficient to demonstrate that the trial court abused its discretion in denying their motion for a new trial. Their speculation that a more orderly presentation might have resulted in an award of greater damages lacks support in the record and is insufficient to merit a new trial. *See Beatrice Foods Co., supra,* 900 F.2d at 392. They also do not describe how they would have altered

their opening statement or examined Amter differently, what arguments or evidence they did not raise, or how these would have been relevant to a material issue in the case. They also do not explain what Geer would have testified to at trial, or how it would have been beneficial to them. We have already concluded that the admission of Folkes's testimony was not erroneous.

Homeowners also do not demonstrate how they were prejudiced by the delay at trial. The trial court instructed the jury that its rulings were responsible for the disjointed presentation, and that the attorneys had a professional responsibility to ask questions and object. We must presume the jury followed this instruction by not holding homeowners responsible for the delays. *See Hawley, supra,* 160 P.3d at 426.

Finally, homeowners have failed to demonstrate that they were incapable of adequately presenting their case at trial. The trial lasted for three months, and at the hearing on their motion for a new trial, their attorney could not point to any evidence they were unable to present. As a result, the trial court did not abuse its discretion in refusing to grant their motion for a new trial. *See Karak v. Bursaw Oil Corp.,* 288 F.3d 15, 21– 22 (1st Cir.2002) (no new trial required where movant was "capable of fully and fairly preparing and presenting his [or her] case notwithstanding the adverse party's arguable misconduct").

### B. C.R.C.P. 59 Irregularities or Surprise

C.R.C.P. 59 permits a court to order a new trial based upon "irregularity in the proceedings," or "surprise, which ordinary prudence could not have guarded against." *See* C.R.C.P. 59(a)(1) & (d)(1)-(3).

■ We review a trial court's decision on a motion for a new trial under C.R.C.P. 59 for abuse of discretion. *See Smiley's Too, Inc. v. Denver Post Corp.,* 935 P.2d 39, 43 (Colo.App.1996).

Homeowners argue that the trial court should have granted them a new trial because of "[a]ppeals to the jury based on the greed of [homeowners]." We will assume that homeowners preserved this argument

for appeal with their motion in limine even though they offered no contemporaneous objection. *See Salazar v. Am. Sterilizer Co.,* 5 P.3d 357, 369 (Colo.App.2000).

■ Brown's counsel stated in his opening statement, "I do not believe there will be any evidence that the members of this class have engaged in any commitment whatsoever to spend that money on remediation or further cleanup. They can spend it any way they want, cars, jewelry, whatever."

This statement did not require the trial court to grant a new trial. It was isolated and, in context, was not necessarily an attempt to impute greedy motives to homeowners but to suggest they had not made and would not make sufficient efforts to mitigate their claimed damages. *See Gross v. B.G. Inc.,* 7 P.3d 1003, 1006 (Colo.App.1999) (isolated statement did not require reversal), *aff'd,* 23 P.3d 691 (Colo.2001); *Anderson v. Dunton Mgmt. Co.,* 865 P.2d 887, 892 (Colo. App.1993) (where argument of counsel in context was not an improper appeal to the jury, no new trial necessary). In fact, Brown's counsel stated in closing that he recognized "that the plaintiffs are well meaning in this case." And the court instructed the jury that "[s]tatements, remarks, arguments, and objections by counsel ... are not evidence," and that it "must not be influenced by sympathy, bias or prejudice against any party in this case." *See Gross, supra,* 7 P.3d at 1006 (no reversal necessary where court instructed jury not to be influenced by sympathy or prejudice).

Homeowners also argue that other irregularities and surprises require a new trial, including changed witness testimony, a witness's disclosure for the first time that he was told of spills at the degreaser and production of his notes during the trial, reference to a certain exhibit in Brown's closing argument, undisclosed testimony of another witness, and Brown's changed defense.

■ However, homeowners do not cite to any portion of the record where they offered a contemporaneous objection to any of these occurrences. Accordingly, their claims of surprise and irregularity are waived, and we will not address them on appeal. *See Adler,*

*supra,* 167 Colo. at 150, 445 P.2d at 908 (evidentiary error); *see also First Nat'l Bank v. Campbell,* 198 Colo. 344, 346, 599 P.2d 915, 916–17 (1979) (instructional errors).

Therefore, we conclude that the trial court did not abuse its discretion in denying homeowners' motion for a new trial.

### X. Award of Costs to Brown

Homeowners contend that the trial court erred in awarding costs to Brown. We agree.

Section 13–17–202(1)(a)(II), C.R.S.2006, provides:

> If the defendant serves an offer of settlement in writing at any time more than fourteen days before the commencement of the trial that is rejected by the plaintiff, and the plaintiff does not recover a final judgment in excess of the amount offered, then the defendant shall be awarded actual costs accruing after the offer of settlement to be paid by the plaintiff.

The purpose of this provision is to encourage settlement. *Dillen v. HealthOne, L.L.C.,* 108 P.3d 297, 300 (Colo.App.2004).

■ However, to invoke § 13–17–202's provisions in cases involving settlement offers to multiple parties, an offer must be apportioned. *See Weeks v. City of Colorado Springs,* 928 P.2d 1346, 1351 (Colo.App.1996); *Winkler v. Rocky Mountain Conference of United Methodist Church,* 923 P.2d 152, 161–62 (Colo.App.1995); *Taylor v. Clark,* 883 P.2d 569, 571 (Colo.App.1994). As the division noted in *Taylor:*

> [S]ince an unapportioned offer can only be accepted by all the offerees acting in unison, an individual offeree cannot independently weigh the benefit of accepting an unspecified portion of the offer against the likelihood of receiving a less favorable judgment. Thus, an unapportioned offer to multiple parties takes away the individual offeree's ability to make a meaningful choice between accepting the offer or continuing with the litigation, and application of the statute under these circumstances

does not comport with the policy of encouraging the settlement of lawsuits.

*Taylor, supra,* 883 P.2d at 571.

■ We review a trial court's decision to award costs for abuse of discretion. *Kennedy v. King Soopers Inc.,* 148 P.3d 385, 389 (Colo.App.2006).

■ Here, Brown made a settlement offer to homeowners more than fourteen days before the trial, and it exceeded the judgment received by homeowners. However, the offer was not apportioned. As a result, it did not invoke the cost-shifting provisions of § 13–17–202, and the court erred in awarding costs to Brown. *See Winkler, supra,* 923 P.2d at 162; *Taylor, supra,* 883 P.2d at 571; *see also Clark v. Farmers Ins. Exch.,* 117 P.3d 26, 29 (Colo.App.2004) (application of "incorrect legal standards" is an abuse of discretion).

Brown contends that the court did not err because homeowners' interests were the same, which made them capable of accepting an unapportioned offer. It argues that certification of homeowners as a class indicates that they have common interests, and that the *Taylor* line of cases does not apply because this case does not involve "multiple parties with distinct interests." *Taylor, supra,* 883 P.2d at 571. We are not persuaded.

Homeowners asserted distinct damage claims. At trial, their expert divided properties in the class into three groups, A, B, and C, which suffered different losses in value based on their geographical location. Homeowners claimed that properties in group A lost thirty percent of their value, group B twenty percent, and group C ten percent. They also asserted claims for loss of use and enjoyment of their properties that varied depending on the levels of contamination of each property. In its certification order, the trial court recognized that there were common issues among class members, but also noted "[i]ndividual issues that may exist relative to damages can be addressed either at a later stage of the case or even in a bifurcated proceeding." Because homeowners' damage claims "required separate calculations and considerations," Brown's unapportioned offer did not invoke § 13–17–202's cost-shifting

provisions. *See Weeks, supra,* 928 P.2d at 1351–52 (unapportioned offer to multiple plaintiffs did not invoke § 13–17–202 where determination of damages "required separate calculations and considerations").

Therefore, we conclude that the trial court erred in awarding Brown its costs, and we reverse that award. We note that because RRSI was awarded costs on a different basis, its award is not affected by our disposition. Because homeowners requested costs under § 13–16–104, C.R.S.2006, on remand the trial court should determine whether they are entitled to costs as prevailing parties under § 13–16–104. Because reversal is necessary on the grounds set forth above, we need not address homeowners' other arguments regarding costs.

### XI. Prejudgment Interest

Brown contends that the trial court incorrectly applied the interest rate for personal injury damages to homeowners' damages for loss of use and enjoyment of their properties, and improperly determined the date on which their claims accrued. We disagree with both arguments.

#### A. Rate

Section 13–21–101(1), C.R.S.2006, authorizes a court to award prejudgment interest on damages in cases involving "personal injuries" at a rate of "nine percent per annum."

■ "An injury is personal when it impairs the well-being or the mental or physical health of the victim.... In contrast, an injury is not personal when inflicted on property." *McCafferty v. Musat,* 817 P.2d 1039, 1046 (Colo.App.1990)(quoting *Miller v. Carnation, supra,* 39 Colo.App. at 7, 564 P.2d at 132).

Section 5–12–102(1)(a)(b), C.R.S.2006, permits a court to award interest at "eight percent per annum" for the wrongful withholding of property.

■ Whether a particular factual circumstance falls within the terms of a prejudgment interest statute is a question of law. *Frontier Exploration, Inc. v. Am. Nat'l Fire Ins. Co.,* 849 P.2d 887, 893 (Colo.App.1992).

We review questions of law de novo. *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 512 (Colo.App.2006).

■ In *Board of County Commissioners v. Slovek,* 723 P.2d 1309 (Colo.1986), our supreme court discussed the differences between injuries to property and personal injuries related to property. It noted, "[A]n owner's claim of interference with a noneconomic, subjective 'use value' arises in part from the annoyance, discomfort or inconvenience suffered by the owner. The two interests affected conceptually distinct—one proprietary, one personal." *Slovek, supra,* 723 P.2d at 1319 n. 8. We construe this language to mean that an owner's damages for loss of use and enjoyment of property can, depending on their nature, derive from either a property injury or a personal injury. *See Slovek, supra,* 723 P.2d at 1319 n. 8; *see also Oscar v. Univ. Students Coop. Ass'n,* 965 F.2d 783, 787 (9th Cir.1992)(loss of use and enjoyment of property caused by neighborhood drug dealers constituted a personal injury); *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918 (3d Cir.1991) (homebuyer's emotional distress based on fear that toxic contamination from a nearby landfill would cause cancer was a personal injury, not a property injury); *Berg v. First State Ins. Co.,* 915 F.2d 460, 464 (9th Cir.1990) (damages for cancellation of insurance policies that caused corporate directors to lose their "present peace of mind" were personal injuries "in the form of emotional distress, not a claim for an injury to property"); *Ingram v. City of Gridley,* 100 Cal.App.2d 815, 224 P.2d 798, 803 (1950) (damages to property owners caused by sewage draining through a nearby slough were "like that claimed by the plaintiff in a personal injury action," because they were not based on loss of market or rental value, but derived from "annoyance, discomfort, and inconvenience").

■ Here, the jury awarded homeowners no economic damages. Based on the testimony of class representatives that their families used their basements less, they felt less comfortable inviting guests over because of the stigma associated with homes in the neighborhood, and they kept windows open because of their fear of the contamination,

the jury awarded homeowners noneconomic damages for loss of use and enjoyment of their properties. Therefore, the homeowners were compensated for intangible, subjective, noneconomic losses, including inconvenience and loss of peace of mind based on their fear that contaminants could be present in portions of their homes and the perceived stigma attached to homes in the neighborhood. Because homeowners' damages derived from their loss of well-being and physical or mental health, we conclude that, for the purpose of determining the appropriate prejudgment interest rate, they were damages for personal injuries. *See McCafferty, supra,* 817 P.2d at 1046.

Contrary to Brown's argument, homeowners' damages for loss of use and enjoyment were not in the nature of damages to real property, because the contamination did not prevent them from using all or a portion of their properties. *Cf.* Restatement (Second) of Torts § 929 cmt. d (1979)(recovery for loss of use and enjoyment permitted when landowner is prevented from using his or her property by a flood). Nor did it cause the loss of rental value or inability to conduct business on the premises. This fact distinguishes this case from *Miller v. Carnation, supra,* on which Brown relies. *See Miller v. Carnation, supra,* 39 Colo.App. at 4, 564 P.2d at 130 (loss of use and enjoyment damages are proprietary when based on loss of rental value); *see also Slovek, supra,* 723 P.2d at 1319 (loss of use and enjoyment generally results from loss of the ability to receive rent or carry on economic enterprise).

We also reject Brown's argument that characterizing homeowners' loss of use and enjoyment damages as personal injury damages would make them duplicative of their damages for annoyance and discomfort. Because the two categories of damages compensated homeowners for distinct personal injuries, one for their personal annoyance and discomfort, and one for their loss of use and enjoyment of their properties based upon inconvenience, loss of peace of mind, and fear, we agree with the trial court's finding that they were not duplicative.

Therefore, under the unique circumstances presented in this case, we conclude that the

trial court properly determined that homeowners' loss of use and enjoyment damages were personal injury damages which accrued interest at the statutory nine percent rate. *See McCafferty, supra,* 817 P.2d at 1046 (where "underlying physical harm upon which [plaintiff] would have recovered ... was clearly personal," damages were personal injury damages); *Herod v. Colo. Farm Bureau Mut. Ins. Co.,* 928 P.2d 834, 838 (Colo.App.1996) (emotional distress caused by withholding insurance benefits for damage to a house); *see also Parker v. USAA,* —— P.3d ——, ——, 2007 WL 1289614 (Colo.App. No. 05CA2361, May 3, 2007)(uninsured motorist benefit claim was a personal injury, not contract claim, because it was "for damages resulting from the tort of another person, even though it also involved the contract with his insurer").

### B. Accrual Date

■ Brown contends that the trial court erred in determining the date from which the prejudgment interest accrued on homeowners' damages. We disagree.

A plaintiff may "claim interest on the damages claimed from the date the action accrued." Section 13–21–101(1). Claims for personal injury accrue "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Section 13–80–108(1), C.R.S. 2006.

■ "The time when a plaintiff discovered, or through the use of reasonable diligence should have discovered, the negligent conduct is normally a question of fact which must be resolved by the trier of fact." *Morris v. Geer,* 720 P.2d 994, 997 (Colo.App. 1986). We will not disturb a trial court's finding of fact unless it lacks any support in the record. *Johnson v. Smith,* 675 P.2d 307, 312 (Colo.1984).

Here, the trial court found that homeowners' claims accrued on November 23, 1994, the date that Brown discovered that "contamination had crossed its property boundary and was inexorably migrating down-gradient into the neighborhood." Brown contends prejudgment interest should

nevertheless not be awarded from that date because homeowners did not suffer "any damage until they learned of the contamination." We are not persuaded.

The trial court's finding that Brown knew of the contamination on November 23, 1994, is supported by evidence in the record, including the testimony of Brown's expert, Guttierez. Further, an internal memorandum dated November 11, 1994, indicates that Brown knew that groundwater flowed toward the neighborhood and had conducted tests which revealed the presence of elevated concentrations of solvents in a monitoring well on the border of the Redfield site. *See also Brown Group Retail, Inc. v. State*, 155 P.3d 481, 486 (Colo.App.2006) (*cert. granted* Apr. 9, 2007), 2007 WL 1040577 (finding in a companion case that "Brown Group should have known the contaminants were traveling off its property ... into the residential areas ... as of December 1994"). Because the trial court's findings are supported by the record, we will not disturb them on review. *Johnson v. Smith, supra,* 675 P.2d at 312.

Although there is no evidence in the record that homeowners knew of their injury in November 1994, the trial court was not precluded from determining that their claims accrued at that time and from awarding prejudgment interest from that date. Brown knew contaminants had migrated beyond the boundaries of the Redfield site in the direction of the neighborhood and did not inform homeowners. Brown's failure to disclose the information to homeowners merely prevented them from discovering their injuries through the exercise of reasonable diligence. *Cf. Patterson v. BP Am. Prod. Co.,* 159 P.3d 634, 641 (Colo.App.2006) (*cert. granted* May 29, 2007, 2007 WL 1535896) (a defendant's fraudulent concealment tolls the accrual date of a claim for the purposes of statute of limitations).

We agree with the trial court that endorsing Brown's argument "would encourage wrongdoers to stall or hide important information in order to avoid prejudgment interest. Rewarding such behavior serves no

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

public purpose and certainly does not compensate victims of negligence." Further, permitting Brown to avoid an award of statutory interest in this case because of its own misconduct would thwart the legislative intent behind § 13–21–101(1), which is "to encourage the settlement of cases both pre- and post-trial." *Stevens v. Humana, Inc.,* 832 P.2d 1076, 1081 (Colo.App.1992).

Therefore, we conclude that the trial court did not err in finding that homeowners were entitled to prejudgment interest on all their damages from November 23, 1994.

The judgment of the trial court is affirmed. The order awarding costs to Brown is reversed, and the case is remanded for further proceedings on the issue of costs consistent with this opinion.

VOGT and STERNBERG *, JJ., concur.