23CA1885 Marriage of Samora 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1885
El Paso County District Court No. 17DR30532
Honorable Catherine Mitchell Helton, Judge

---

In re the Marriage of

Angela M. Samora, n/k/a Angela M. Baker,

Appellee,

and

Samuel E. Samora,

Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE JOHNSON
Fox and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Law Office of Greg Quimby, P.C., Greg Quimby, Erica Vasconcellos, Colorado Springs, Colorado, for Appellee

Law Office of Dailey & Pratt, LLC, Lisa M. Dailey, Joel M. Pratt, Colorado Springs, Colorado, for Appellant

¶ 1    In this post-decree dissolution of marriage case between Angela M. Samora n/k/a Angela M. Baker (mother) and Samuel E. Samora (father), father appeals the district court's order denying in part his motion to modify parental responsibilities for P.S. and F.S. (the children).  We affirm.

## I.    Background

¶ 2    Mother and father were married in 2014 and divorced in 2018.  Before the final orders, a magistrate granted mother's motion to restrict father's parenting time due to allegations that father had sexually assaulted P.S.  The magistrate also ordered that father complete a psychosexual evaluation and follow all recommendations.  Father completed an evaluation, but did not comply with the recommendation to submit to a polygraph examination by a provider certified by the Sex Offender Management Board (SOMB).

¶ 3    When issuing final orders as to parenting time, the district court found insufficient evidence to sustain the allegation of sexual assault but expressed concern about the safety of the children while

in father's care.  The court adopted mother's parenting plan, which had the children residing primarily with mother, and father receiving two supervised visits per week until he produced a passing SOMB-certified polygraph report.  Once father met this requirement, he would "step up" from two unsupervised visits per week "utilizing a gatekeeper through Therapeutic Arena" for two months;[1] to two unsupervised visits per week without a gatekeeper for two months; and finally to every other weekend with the children unsupervised, from 5 p.m. Friday until 5 p.m. Sunday, with an additional dinner visit every other week, from 5 p.m. to 7 p.m.

¶ 4    In August 2020, mother filed a motion requesting permission to relocate with the children to Washington.  Father then filed a motion requesting — as relevant here — reintegration therapy and an increase in parenting time "ultimately resulting in 50/50 parenting time."  He attached a polygraph report issued by a

---

[1] We assume that the district court's reference to a "gatekeeper" is a facilitator or therapist at Therapeutic Arena.

2

SOMB-certified provider in August 2020, including the result that he had passed. The district court held hearings on these motions in April and May 2021, and issued a written order in August 2021 (August 2021 order).

¶ 5    The court found that, due to father's "inflexible" and combative behavior during supervised parenting time — he "followed a supervisor, threw money at her, and was combative" — the twice-weekly supervised visits that were supposed to be taking place had been stopped for "a significant time." The court reviewed the polygraph report and "did not feel the questions were broad enough to determine" if father had assaulted the child. Nevertheless, the court concluded that "it did not find the issue of penetration to be a lingering issue." The court denied mother's motion and granted father's motion. The court ordered father and the children into reintegration therapy and maintained father's two supervised visits per week.

¶ 6    In October 2022, father filed another motion to modify his parental responsibilities. He asserted that he complied with the

court's requirements and requested a 50/50 parenting plan. After a hearing in June 2023, the court decided "that it [was] in the best interest of the minor children to modify parenting time in this case." In a July 2023 written order (July 2023 order), the court found that father had never shown that he completed reintegration therapy, ordered that the children continue to reside primarily with mother, and made modifications to father's parenting time. The court ordered as follows:

- Father must file proof of enrollment and engagement in the Caring Dads program.

- Father will continue to have supervised parenting time twice per week until he has completed his fourth class in the Caring Dads program.

- After providing proof to the court that he completed his fourth class, father's parenting time will become unsupervised and increase to "every other Saturday from 11:00 a.m. through 3:00 p.m., every other Sunday from

4

11:00 a.m. through 3:00 p.m., and every Wednesday from 5:00 p.m. through 8:00 p.m."

- After providing proof to the court that he completed the Caring Dads program, father's unsupervised parenting time will increase to every other weekend from Saturday at 11:00 a.m. to 6:00 p.m. and every Wednesday from 5:00 p.m. to 8:00 p.m.

- Two months after he completes the Caring Dad program, father's unsupervised parenting time will increase to every other weekend from Friday at 6:00 p.m. through Sunday to 6:00 p.m. and every Wednesday from 5:00 p.m. through 8:00 p.m.

¶ 7 The court emphasized that "[f]ather's unsupervised parenting time [was] contingent upon [his] enrolling in and fully engaging in the Caring Dads program." If he did not do so, "parenting time [would] revert to supervised parenting time twice per week."

5

## II.    No Endangerment Finding

¶ 8    Father argues that the court should make endangerment findings any time it restricts parenting time, "even if such a restriction had existed based on prior endangerment findings."  He therefore contends that the district court erred in this case when it "maintain[ed] the restriction on his parenting time" without finding that he endangered the children.  Although, as we describe below, the facts present the question of whether the modification of an existing restriction on parenting time requires a finding of endangerment, we conclude that this issue is moot.

### A.    Standard of Review and Applicable Law

¶ 9    We review a district court's ruling on parenting time for an abuse of discretion, and we exercise every presumption in favor of upholding its decision.  *In re Marriage of Collins*, 2023 COA 116M, ¶ 8.  We will not disturb a court's ruling absent a showing that the court abused its discretion.  *Id.*  A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or

6

when it misapplies the law. *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

¶ 10    A court may modify existing parenting time when the modification serves the child's best interests. *See* § 14-10-129(1)(a)(I), C.R.S. 2024; *see In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 14. The court is encouraged to promote stability as well as frequent and continuing contact between the child and each parent. *See* § 14-10-124(1), C.R.S. 2024; *see also Spahmer v. Gullette*, 113 P.3d 158, 163 (Colo. 2005) (noting that a "goal of a modification proceeding is to maintain . . . stability, if possible, in the best interests of the child"). In considering the child's best interests, the court considers all relevant factors, including those identified in section 14-10-124(1.5)(a).

¶ 11    The court, however, may not *restrict* a parent's existing parenting time unless it finds that the parenting time would "endanger the child's physical health or significantly impair the child's emotional development." § 14-10-129(1)(b)(I). "[I]n any order

7

. . . continuing a parenting time restriction" — in addition to a finding that parenting time would endanger the child's physical health or significantly impair the child's emotional development — "the court shall enumerate the specific factual findings supporting the restriction." § 14-10-124(1.5)(a). Just as father points out, the type of restriction necessary to invoke the endangerment standard is not defined. But case law indicates that supervised parenting time is a restriction and not a modification. *In re Marriage of Thorburn*, 2022 COA 80, ¶ 29.

## B. Analysis

¶ 12 In this case, the July 2023 order maintained the supervised parenting time ordered in August 2021, suggesting that the court's order qualifies as a continued restriction. But the order also changed the reintegration therapy requirement in the August 2021 order to attendance and engagement in the Caring Dad's program in the July 2023 order, suggesting that it may be a modification. *See In re Marriage of West*, 94 P.3d 1248, 1251 (Colo. App. 2004) (court determining whether modification is a restriction should look

into "both the quantitative and the qualitative aspects of the proposed parenting time, as well as the reason or reasons advanced for the change.").

¶ 13    The court's written order indicates that it considered the order a modification and not a continuing restriction, thereby requiring a best interest analysis but no endangerment finding.  Thus, in its ruling modifying father's parenting time, the district court cited to 14-10-124(1.5)(a), and found that

- Father requested a step-up plan to a shared parenting time schedule, while mother asked the court to deny that request.  *See* § 14-10-124(1.5)(a)(I).

- The children, who were nine and seven years old, could not yet give a "reasoned and independent preference as to parenting time."  *See* § 14-10-124(1.5)(a)(II).

- Mother has had "more significant interaction [with the children] since the separation of the parties."  *See* § 14-10-124(1.5)(a)(III).

- Father has been found to have perpetrated acts of domestic violence against mother and has been found to have committed an act of child abuse. *See* § 14-10-124(1.5)(a)(III.5).

- The children are well adjusted in both mother's and father's homes. *See* § 14-10-124(1.5)(a)(IV).

- Father has been diagnosed with PTSD, anxiety, and depression. *See* § 14-10-124(1.5)(a)(V).

- Both parties have the ability to encourage a relationship between the children and the parents, but they have not consistently done so. *See* § 14-10-124(1.5)(a)(VI).

- The court is concerned that father cannot put the child's needs ahead of his own — he blamed mother for preventing his parenting time, while not recognizing that his lack of compliance with the court's specific instructions delayed his unsupervised parenting time. Mother is able to put the child's needs ahead of her own. *See* § 14-10-124(1.5)(a)(VII).

10

While the court specifically expressed concern about father's ongoing "struggle with appropriate boundaries during his parenting time" and his credibility, the court made no implicit or explicit findings suggesting that the children's physical health or emotional development were endangered. § 14-10-129(1)(b)(I).

¶ 14     Even if failing to find endangerment was error, we agree with mother that the issue is now moot. This is because, as mother states, "[f]ather did his classes and moved in his fuller parenting time schedule." *See In re Marriage of Tibbetts*, 2018 COA 117, ¶ 7 ("An appellate court will not render an opinion when the issues presented have become moot because of subsequent events."). The record shows that father's counsel filed confirmation that father had enrolled in and completed four sessions of the Caring Dads program. And it includes a transcript of the hearing during which a magistrate ordered largely unsupervised visits. True, in the month before the notice of appeal was filed, father continued to file motions seeking to enforce the revised parenting time schedule, suggesting that he had not yet had unsupervised parenting time

11

with the children.  Nevertheless, father admitted, in his reply brief, that "the restriction [of supervision] ha[d] passed."

¶ 15     Father, citing *People in Interest of Vivekanathan*, 2013 COA 143M, ¶ 9, argues that a determination that this issue is moot "would render short-term restrictions of a parent's time unreviewable."  But father does not develop his argument that the issue is capable of repetition but evading review, where he offers no basis for concluding that *he* will again be subject to the same restrictions.  *See id.* at ¶ 15; *see also People v. Garcia*, 2014 COA 85, ¶ 22 (noting that for an issue to be capable of repetition but evading review, there must be a "'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party") (citation omitted).  We therefore decline to address this argument.  *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007).

### III.    Lack of Expert Testimony

¶ 16     Father also argues that the district court erred — violating his due process rights — when it allegedly applied an "adverse

12

inference" to father's refusal to release his reintegration therapist or his therapeutic visitation supervisor (father's therapists) from their therapeutic privilege. Father argues that the court left restrictions on his parenting time in part because he prevented the therapists from testifying about his progress in therapy. We perceive no error.

¶ 17   Another division of this court has concluded that the determination of whether an adverse inference should be applied is "an ultimate conclusion of fact." *Romero v. Colo. Dep't of Hum. Servs.*, 2018 COA 2, ¶¶ 43-44. We review a court's factual conclusions for clear error. *Gagne v. Gagne*, 2019 COA 42, ¶ 17. Father, loosely interpreting case law, argues that a court may make an adverse inference against a party who refuses to disclose information he was ordered to disclose. *See In re Marriage of Sgarlatti*, 801 P.2d 18, 19 (Colo. App. 1990) (noting that when a party in a domestic relations case refuses to make financial disclosures, the district court is authorized to draw the inference that the party is concealing additional resources).

13

¶ 18    Even if we adopt this broad understanding of the law, father's argument is not successful because the record does not support it. According to father, the court's statement that the therapists' testimony would have been "helpful" revealed the court's improper assumption that the lack of this testimony was evidence that father was a danger to the children. But the record belies this interpretation. The court made no findings indicating it was making an adverse inference, nor did it order father to disclose information about his therapy. Instead, the court explicitly acknowledged that father "[was] not required to present testimony from any professionals in this case."

¶ 19    This record evidence does not support the existence of an adverse inference. Thus we cannot conclude that the court erred, impacting father's due process rights.

## IV.   Conclusion

¶ 20    The order is affirmed.

JUDGE FOX and JUDGE SCHOCK concur.

14